IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

**FILED**
**June 13, 2013**
**released at 3:00 p.m.**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

---

No. 12-0367

---

JAMES COLLISI,
Petitioner

v.

MARIDALE COLLISI,
Respondent

---

Appeal from the Circuit Court of Marion County
The Honorable Michael John Aloi, Judge
Civil Action No. 10-D-518

REVERSED AND REMANDED WITH DIRECTIONS

---

Submitted: May 15, 2013
Filed: June 13, 2013

Linda Hausman, Esq.
Samantha L. Chapman, Esq.
Kaufman & McPherson, PLLC
Bridgeport, West Virginia
Counsel for the Petitioner

Scott Curnutte, Esq.
Michael A. Bush, pursuant to Rule 10, Rules for Admission to the Practice of Law
Jeffery Kaiser, pursuant to Rule 10, Rules for Admission to the Practice of Law
WVU Clinical Law Program
Morgantown, West Virginia
Counsel for the Respondent

The Opinion of the Court was delivered PER CURIAM.

SYLLABUS BY THE COURT

"In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syl., *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

Per Curiam:

The case *sub judice* involves the divorce of the petitioner, James Collisi ("Mr. Collisi"), from the respondent, Maridale Collisi ("Ms. Collisi"). In his appeal to this Court, Mr. Collisi challenges the award of permanent spousal support in the amount of $1,600 per month for Ms. Collisi; the finding that Mr. Collisi was a greater contributor to the breakdown of the marriage than Ms. Collisi; and the requirement that Mr. Collisi pay $44,314.14 in equitable distribution to Ms. Collisi. These findings were memorialized in the November 11, 2011, Decree of Divorce and Final Order of the Family Court of Marion County. Mr. Collisi appeals the February 15, 2012, Order Affirming the Family Court "Decree of Divorce and Final Order" of the Circuit Court of Marion County.

After thoroughly reviewing the record presented, the briefs, the relevant legal authorities, and the arguments of Mr. Collisi and Ms. Collisi, we find that the family court erred with regard to each of the issues raised by Mr. Collisi and that the circuit court consequently erred by affirming the family court's order. We reverse and remand this case so that the family court can correct its errors pursuant to the directions set forth in this opinion.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Collisi married Ms. Collisi on September 23, 1994. At the time of the marriage, Ms. Collisi had two minor children from a previous relationship; both children were adults at the time the parties began these divorce proceedings. There were no children born to the parties during the marriage. Mr. and Ms. Collisi last cohabitated on December 29, 2009.

In May of 2010, Ms. Collisi sought a Domestic Violence Protective Order against Mr. Collisi, alleging that he was physically, mentally and emotionally abusive. The order was granted on May 3, 2010, and Ms. Collisi was awarded $400 per month in spousal support. Ms. Collisi filed for divorce on October 28, 2010.

The final divorce hearing was held on September 26, 2011. Sometime prior to the hearing, the parties submitted to drug testing. While Mr. Collisi tested negative for drugs, Ms. Collisi tested positive for THC.[1] The parties also provided individual financial statements to the court. Ms. Collisi's financial statement indicated that she had $520 per month in expenses.

---

[1] THC is the common name for tetrahydrocannabinol. It is the psychoactive component of marijuana. *See State v. Boggess*, 172 W. Va. 619, 624–25, 309 S.E.2d 118, 124–25 (1983).

During the hearing, Ms. Collisi testified that she was employed at a 7-Eleven convenience store making roughly $500 or $550 a month.[2] She stated that her expenses, which included food costs, gasoline, and utilities, were between $738 and $808. She testified that Mr. Collisi supported her and her children during the marriage, but that he was physically and emotionally abusive to her.

Mr. Collisi testified that he is a shift supervisor for Mission Operation and Maintenance, otherwise known as Mission Energy. On his financial statement, he indicated that his gross pay per two-week period was $2,972.80. No evidence was presented at the hearing detailing Mr. Collisi's monthly expenses. Mr. Collisi alleged that Ms. Collisi was adulterous and an illicit drug user.

Both parties testified about the marital home. They both agreed that Mr. Collisi bought the home prior to his marriage to Ms. Collisi. At the time the parties were married, Mr. Collisi had already paid $23,000 on the home. The remaining principal owed on the home when the parties married was $65,700. The remaining $65,700 in principal, plus interest, was paid with marital funds during the marriage. Upon the initiative of the parties, the home was appraised in August of 2011 for $110,000, and the parties do not dispute that $110,000 is the current value of the home. Mr. Collisi testified

[2] The record is unclear as to whether this is Ms. Collisi's net income or gross income.

that there are currently two liens on the home totaling $97,000: the liens represent a mortgage and a line of credit that were both obtained by Mr. Collisi in his name only during the marriage.

The family court did not announce any findings during the hearing. It entered its Decree of Divorce and Final Order containing its findings of fact and conclusions of law on November 15, 2011. In determining that the marital estate had a $65,700 interest in the home, the family court said,

> 1) The former marital home was purchased by James Collisi a few months prior to the marriage of the Parties.
> 2) The former marital home has remained titled in the name of James Collisi throughout the marriage of the Parties.
> 3) Both Parties testified that upon the marriage of the Parties, the former marital home was encumbered by a note payable in the amount of $65,700.00, secured by a Deed of Trust upon that property.
> 4) The unequivocal evidence is that regular monthly payments upon that note payable were satisfied during the marriage with funds from a marital checking account, funded by the earnings of the Parties, particularly James Collisi.
> 5) Accordingly, the Family Court finds, concludes, and so rules, that the marital estate includes $65,700.00 pursuant to W.VA. CODE § 48-1-233(2)(A).[3]

[3] The pertinent text of W. Va. Code § 48-1-233 is quoted *infra* Part III.B.

(Footnote added). The family court further ordered that Mr. Collisi have exclusive ownership and possession of most of the remaining marital property, the value of which the family court determined was $54,583.11. It also ordered that Mr. Collisi assume sole liability for the marital debt which the family court determined amounted to $31,652.82. To equalize the distribution of marital assets, the family court ordered that Mr. Collisi pay $44,315.14 to Ms. Collisi.

The order also granted an award of spousal support to Ms. Collisi in the amount of $1,600 per month, finding that "[e]ach of the factors delineated in W.VA. CODE § 48-6-301[4] which apply [sic] to this case weigh [sic] strongly in favor of a substantial, permanent award of spousal support to Maridale Collisi." (Footnote added). Of particular note, the family court found:

> W.VA. CODE § 48-6-301(b)(17): Each Party has a financial need commensurate with the comfortable, middle-class lifestyle they [sic] enjoyed during the marriage. Neither Party has any unusual financial need or circumstance. James Collisi will be able to enjoy such a lifestyle even if he pays a substantial spousal support obligation. Maridale Collisi, on the other hand, has a financial need equivalent to the gap between the minimum wage employment she is treated as having even though her actual income is less, and the standard of living enjoyed during the marriage.

[4] There are twenty separate factors described in W. Va. Code § 48-6-301(b) that a court must consider in awarding spousal support. Of the twenty factors, the seventeenth is most pertinent to this appeal: "(17) The financial need of each party[.]"

The circuit court also discussed the fault or misconduct of the Parties and how that conduct affected the marriage:

> 8. Although there are no longer any statutory bars to spousal support, pursuant to W.VA. CODE § 48-8-104[5] the Court is to consider and compare the fault or misconduct of the Parties and the extent to which such conduct contributed to the breakup of the marriage.
> 9. Maridale Collisi introduced evidence that James Collisi was physically, mentally, and emotionally abusive during the marriage[.]
>
> . . . .
>
> 10. James Collisi claims Maridale Collisi committed adultery and that she abandoned him.
>
> . . . .
>
> 13. Comparing the relative fault of the Parties is difficult, given that the Court finds that each engaged in behavior which would be substantially inequitable if the other Party was blameless. The Court must, therefore, reluctantly conclude that the Parties' relative fault was equal.
> 14. The Court further finds, concludes, and so rules, that James Collisi's conduct was a greater contributor to the breakdown of the marriage than Maridale Collisi's.
>
> . . . .
>
> 15. Based upon all the foregoing, the Family Court finds, concludes, and so rules, that James Collisi shall pay Maridale Collisi spousal support in the amount of $1,600 per month, effective 1 December 2011. Such spousal support shall continue until the death of either Party, or the remarriage of Maridale Collisi.

[5] W. Va. Code § 48-8-104 states,

> In determining whether spousal support is to be awarded, or in determining the amount of spousal support, if any, to be awarded, the court shall consider and compare the fault or misconduct of either or both of the parties and the effect of the fault or misconduct as a contributing factor to the deterioration of the marital relationship.

(Footnote added).

Mr. Collisi appealed the family court's order to the Circuit Court of Marion County. The circuit court affirmed the family court's order, making general findings that the family court's findings of fact were not clearly erroneous and that its conclusions of law were not an abuse of discretion. Mr. Collisi now appeals the circuit court's order to this Court.

## II.

## STANDARD OF REVIEW

The order before the Court is a final order entered by a circuit court reviewing the final order of the family court.

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syl., *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

## III.

## ANALYSIS

In this appeal, Mr. Collisi challenges the award of permanent spousal support in the amount of $1,600 per month for Ms. Collisi; the finding that Mr. Collisi was a greater contributor to the breakdown of the marriage than Ms. Collisi; and the requirement that Mr. Collisi pay $44,314.14 in equitable distribution to Ms. Collisi. Because the first two issues relate to the award of spousal support, we will proceed by discussing those together, and then we will separately address the equitable distribution issue.

### A. Spousal Support

Mr. Collisi argues that the award of $1,600 per month in permanent spousal support for Ms. Collisi is excessive in that it exceeds Mr. Collisi's ability to pay and that it is unsupported by the record. Upon examining both orders of the family and circuit courts, we find that the family court conducted an incomplete analysis of W. Va. Code § 48-6-301(b). Specifically, W. Va. Code § 48-6-301(b)(17) requires that a court consider "[t]he financial need of each party" when determining the proper amount to award in spousal support. With regard to this section, the family court said in its order,

> Each Party has a financial need commensurate with the comfortable, middle-class lifestyle they enjoyed during the marriage. Neither Party has any unusual financial need or circumstance. James Collisi will be able to enjoy such a lifestyle even if he pays a substantial spousal support obligation. Maridale Collisi, on the other hand, has a financial

> need equivalent to the gap between the minimum wage employment she is treated as having even though her actual income is less, and the standard of living enjoyed during the marriage.

Neither in this section nor anywhere else in the order does the family court make any specific findings as to Mr. Collisi's financial need which would indicate his ability to pay spousal support.

Ms. Collisi argues to this Court that it is clear from the entirety of the order that the family court considered Mr. Collisi's ability to pay. We do not agree. There are monetary figures present in the family court's order affecting Mr. Collisi's ability to pay: his yearly income and the imposition of debt and assets upon him. However, there are no monetary figures in the order detailing Mr. Collisi's monthly expenses. Mr. Collisi obviously has monthly expenses given that he has separate debt totaling approximately $97,000, yet the amount and frequency of payments due on that debt is unclear from the record. The family court's imposition of the marital debt on Mr. Collisi will also likely affect his ability to pay spousal support, but the analysis and details explaining how are not in the family court's order. Based on the record before us, we do not see how the family court could have adequately considered Mr. Collisi's ability to pay spousal support.

Additionally, although the family court's order includes a general discussion of Ms. Collisi's financial need, the order again does not include any monetary

figures regarding her actual need. Unlike Mr. Collisi's position, evidence was presented regarding Ms. Collisi's need through a financial statement and through testimony as to her basic needs; however, it is not clear upon our review which of the multiple differing monetary figures that appear in the record—amounts ranging from $400 to $808—actually represents her financial need.

We are also perplexed by the family court's contradictory statements regarding the fault of parties and the parties' contributions to the breakup of the marriage. The order states that "[t]he [family court] must, therefore, reluctantly conclude that the Parties' relative fault was equal," yet it continues in the next sentence by declaring that it "finds, concludes and so rules, that James Collisi's conduct was a greater contributor to the breakdown of the marriage than Maridale Collisi's." The family court is required by W. Va. Code § 48-8-104[6] to consider the fault of each party and the effect that fault had on the breakup of the marriage. While the family court adheres to the technical requirement of the statute, it does so in a way that makes no sense to this Court. If the relative fault was equal, how is one party a greater contributor? Furthermore, we are puzzled by the family court's decision not to include any mention of Ms. Collisi's drug use despite Mr. Collisi's testimony claiming that Ms. Collisi's drug use contributed to the breakup of the parties.

---

[6] The full text of W. Va. Code § 48-8-104 is provided *supra* in note 5.

This Court has said that to properly review an order of a family court, "[t]he order must be sufficient to indicate the factual and legal basis for the [family court]'s ultimate conclusion so as to facilitate a meaningful review of the issues presented." *Province v. Province*, 196 W. Va. 473, 483, 473 S.E.2d 894, 904 (1996); *see also Nestor v. Bruce Hardwood Flooring, L.P.*, 206 W. Va. 453, 456, 525 S.E.2d 334, 337 (1999) ("[O]ur task as an appellate court is to determine whether the circuit court's reasons for its order are supported by the record."). "Where the lower tribunals fail to meet this standard—*i.e.* making only general, conclusory or inexact findings—we must vacate the judgment and remand the case for further findings and development." *Province*, 196 W. Va. at 483, 473 S.E.2d at 904.

We find that the generalizations made by the family court as to the financial need of each party and the conflicting statements as to the fault of the parties do not provide a sufficient factual basis for this Court to determine whether the $1,600 award is appropriate. With the limited and contradictory information provided in the family court's order, it is impossible for this Court to decide whether the family court's award of spousal support amounts to an abuse of discretion. Therefore, we conclude that this case must be reversed and remanded. On remand, the family court should take evidence as to the financial need and ability to pay of Mr. Collisi, it should enunciate the financial need of both parties, it should provide a definite statement regarding the fault of the parties,

and it should calculate a spousal support award—if it determines that an award is appropriate—that is supported by relevant and specific facts.[7]

### B. Equitable Distribution

Mr. Collisi contends that the family court erred in its determination that he must pay $44,314.14 to Ms. Collisi to equalize the distribution of marital assets. The only portion of this payment that Mr. Collisi regards as error is the amount representing the family court's valuation of the marital home. The family court determined that the marital interest in the home was $65,700, and so it divided that interest among Mr. and Ms. Collisi.

Although the family court did not explicitly find that the home itself is the separate property of Mr. Collisi, there is no doubt that the home is his separate property. "Separate property" pursuant to W. Va. Code § 48-1-237(1) includes "[p]roperty acquired by a person before marriage." The family court's order did find that the home was acquired by Mr. Collisi before the marriage. While the home is Mr. Collisi's separate property, there may yet be a marital interest in the property. In determining the

[7] Mr. Collisi argues that the family court's original award of $1,600 in permanent spousal support—which is far greater than Ms. Collisi's need range of $400 to $808—represents the family court's attempt to equalize the income of the parties. We recognized in *Stone v. Stone*, 200 W. Va. 15, 19 n.8, 488 S.E.2d 15, 19 n.8 (1997), that "[w]e have not been able to discern from our divorce laws a legislative intent that a principle like equalization of income is to be applied in determining [spousal support]." To the extent that the family court's order and the record are incomplete, we are unable to address this issue.

proper value of the marital interest in the home, W. Va. Code §§ 48-1-233 and -237(6) must be applied. According to W. Va. Code § 48-1-233,

> "Marital property" means:
> . . . .
> (2) The amount of any increase in value in the separate property of either of the parties to a marriage, which increase results from: (A) an expenditure of funds which are marital property, including an expenditure of such funds which reduces indebtedness against separate property, extinguishes liens, or otherwise increases the net value of separate property; or (B) work performed by either or both of the parties during the marriage.

In considering the increase in value of the home, a court must take into account any increase in value due to outside causes pursuant to W. Va. Code § 48-1-237: "'Separate property' means: . . . (6) Any increase in the value of separate property . . . which is due to inflation or to a change in market value resulting from conditions outside the control of the parties."

It is readily apparent that although the family court referenced W. Va. Code § 48-1-233 in deciding that the marital value of the home was $65,700, the court erroneously applied the statute. Both W. Va. Code §§ 48-1-233 and -237 refer to the increase in the value of the separate property. Pursuant to these statutes, the value of separate property is the difference between the value of the property at the time of the marriage and at the dissolution of the marriage. It is not, as the family court contends, the

amount of marital funds expended on the separate property, which ultimately may have no effect or even a negative effect on the value of the separate property.

The proper calculation for the value of the separate property at issue in this case, the home, is the difference between the value of the home at the time of the marriage and the value at the time of the dissolution of the marriage. Here, the family court did not make any findings as to the value of the home at the time of the marriage nor did it make any findings as to the value of the home at the end of the marriage; however, we do note that the undisputed facts in the record indicate that the value of the home at the dissolution of the marriage was $110,000. Furthermore, the family court did not take any evidence as to any increase in the value of the home, if any, that may have been due to inflation or a change in market value resulting from conditions outside of the control of the parties. Because insufficient findings of fact appear in the record for this Court to determine the proper value of the marital interest in the home, this case must be reversed and remanded so that the family court can take additional evidence to determine the proper value of the home and make the appropriate findings of fact in accordance with W. Va. Code §§ 48-1-233 and -237.

## IV.

## CONCLUSION

For the reasons set forth above, this Court reverses the circuit court's February 15, 2012, order affirming the family court's November 11, 2011, Decree of

Divorce and Final Order, and we remand this case for further proceedings consistent with this opinion.

Reversed and remanded with directions.