IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**September 4, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**LORI B.,**
**Respondent Below, Petitioner**

**v.) No. 23-ICA-499**          (Fam. Ct. Raleigh Cnty. No. FC-41-2018-D-43)

**DANNY F.,**
**Petitioner Below, Respondent**


## MEMORANDUM DECISION

Petitioner Lori B.[1] ("Mother") appeals the Family Court of Raleigh County's October 16, 2023, and December 19, 2023, orders that modified its July 7, 2022, Modification Order by awarding Respondent Danny F. ("Father") equal (50-50) custodial allocation of the parties' children. Father and the guardian ad litem ("GAL") for the children filed responses in support of the family court's decision.[2] Mother did not file a reply. The issue is whether there had been a substantial change of circumstances that was not known or anticipated since the July 2022 order that justified the custodial modification pursuant to West Virginia Code § 48-9-401 (2022).

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the family court's decision but no substantial question of law. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure for remand in a memorandum decision. For the reasons set forth below, the family court's October 16, 2023, and December 19, 2023, orders are vacated and the case is hereby remanded for further proceedings consistent with this decision.

The parties are the parents of twin boys who were born in October 2017. By way of background, Mother has always been the children's primary custodial parent. On February 18, 2020, when the children were two and a half years old, the family court entered the

---

[1] To protect the confidentiality of the juvenile involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Mother is represented by Brandon L. Gray, Esq. Father is unrepresented. The GAL for the children is Latachia Miller, Esq.

initial final order following a September 13, 2019, custody hearing. The final order included a permanent parenting plan agreement that designated Mother as the primary custodian of the children and awarded Father parenting time on every second, third, and fourth weekend of every month. The order stated that "[t]he exchange for this visitation will occur at 10:00 a.m. on Saturday and [Father] will drop the minor children off at Day Care/School on Monday morning." Father also received parenting time from Wednesday once he picked the children up from daycare until Thursday at 5:00 p.m. of the week that he did not receive any weekend parenting time. Holidays were split between the parties in terms of even and odd years, and each party received three non-consecutive weeks of parenting time during the summer, as defined by the Raleigh County School District. The order also stated that once the children turned five years of age (October 2022), the parties were to alternate parenting time on a weekly basis during the summer pursuant to the Raleigh County School District Calendar.

Although unclear from the record, at some point after the entry of the initial parenting plan agreement, Father moved to South Carolina, where he resided for more than a year and saw very little of his children. After moving back to Raleigh County, Father filed his first petition to modify custody of the children.[3] On June 22, 2022, when the children were four years old, the family court held a final hearing on Father's petition. On July 7, 2022, the court entered its final modification order that ordered Mother to remain as the children's primary custodial parent, but Father's parenting time was modified from every second, third, and fourth weekend of every month to every other weekend. He also received parenting time on Wednesday through Thursday of alternating weeks. The family court also ordered that "[a]ll provisions of prior [o]rders in this matter not modified herein remain in full force and effect." Thus, it appeared that the remaining provisions of the February 2020 initial parenting plan agreement, such as holidays and the summer school schedule, were to remain in effect.

In 2023, Father filed another petition for modification of custody, alleging that he was concerned about the children's safety because they had access to Mother's prescription medication.[4] On October 24, 2023, the family court held a final hearing on Father's

---

[3] The record seems to indicate that the family court entered a temporary order on Father's first petition for modification in March 2022 that gave him parenting time every other weekend and Wednesday through Thursday on alternating weeks as a trial run since he had been absent for over a year in South Carolina.

[4] The record neither includes the date that Father filed his second petition for modification nor the actual petition. However, the relevant parts of his petition were read into the record during the final hearing.

petition. The official transcript indicates that the family court appointed a GAL for the children upon the filing of Father's 2023 petition.[5]

At the beginning of the hearing, the GAL testified to her investigation and recommendations. The GAL stated that the children were five years old when she interviewed them and that they wanted "to see their dad more," but they liked being with their mom more because she allowed them to rip pages out of their coloring books. The GAL testified that she "didn't interview them for a very long time just because of their age." She additionally testified that Father lived in an apartment with his father, and that he wanted more time with his children. She was made aware that there was a history of the grandparents not being able to be around the children but did not know any other details. She further stated that although there were allegations of substance abuse, in her opinion, neither parent was abusing a substance. Father had a prescription for suboxone, there were no medications out in view at Mother's home, and both parents were fit and acceptable parents.[6] Upon being questioned, she acknowledged that Father's desire to spend more time with his children was not a substantial change in circumstances pursuant to the code and that the allegations in Father's petition to modify were unfounded. Nonetheless, the GAL recommended that the family court award each parent equal (50-50) custody of the children, stating that the children were ready to spend more time with Father since they would be turning six soon.

Father then testified in support of his petition. He stated that his children deserved to spend equal time with both parents; if they were girls, he would feel differently but since the children were boys, they deserved more time with him. He asserted that since Mother ignored the alternating weekly summer arrangements from the 2020 order when the children turned five, that it was just more time he missed with them. He further testified that his father lived with him and was also prescribed suboxone. He acknowledged that the previous family court judge required his father to submit to four random drug screens before he could have any contact with the children and there was a history of his parents not being permitted contact with the children. Although Father admitted that the children's schooling was contemplated and discussed at the previous modification hearing held in June 2022, he stated that because the children had not yet started pre-k when the June 2022 order was entered, the circumstances had substantially changed to support his current petition for modification.

---

[5] This case was formerly heard by Judge Goldston, who retired. The presiding family court judge was appointed in April 2023.

[6] She was also questioned about the history of Father's parents' drug use and how the previous judge had not allowed them any contact with the children, but she was unaware of the alleged history.

Upon the conclusion of Father's case-in-chief, Mother's counsel moved to dismiss the petition for modification based on there being no substantial change of circumstances since the July 2022 modification order. Her counsel argued that the children's schooling was considered and discussed at the previous June 2022 modification hearing and there was nothing new for the family court to consider. Mother's counsel specifically argued that the crux of Father's current petition was that Mother left her medication within the children's reach, but the GAL testified that such allegation was unfounded. Mother's counsel further argued that Father only wanted to spend more time with his children, which was not an applicable substantial change of circumstances pursuant to the code. Father's counsel made no argument except to remind the court of the GAL's recommendation. The court subsequently permitted Mother to respond and present counter evidence to Father's case-in-chief.

Mother testified that the children were smart for their age but were not mature enough to state their desired preference. She stated that she and Father had never been able to get along and informed the family court of Father's history of domestic violence, arrests, and that he was on probation at some point. She testified that she had given his mother permission to pick the children up once because between Father's mother and father, his mother was the "lesser of two evils." She asserted that she does not believe it would be in the children's best interest for the parties to share equal (50-50) custody and that Father should continue to receive his parenting time pursuant to the July 2022 order. The following colloquy then took place between the court and Mother:

> **THE COURT:** Well -- go ahead. Let me -- let me ask your client some questions then.
> Since the final order in 2019, has he only had weekend time with his children?
> **THE WITNESS:** Every other weekend.
> **THE COURT:** Has there ever been a holiday time or a summertime --
> **THE WITNESS:** Yeah. He gets holidays. We split the holidays.
> **THE COURT:** Okay. Has he had more than two days a row -- in a row during those time periods?
> **THE WITNESS:** For the holidays?
> **THE COURT:** Yes.
> **THE WITNESS:** We do like every other year, we alternate the years, he gets like -- I can't even think right now. God.
> **THE COURT:** Can you remember what last year's schedule was?

4

**THE WITNESS:** I know it's like -- her -- December 25th until New Year's Eve. We -- we alternate that. Back and forth with that.
**THE COURT:** Okay.
**THE WITNESS:** As far as I can remember. I'm sorry.
**THE COURT:** Okay. So, there have been periods of time since 2019 that he's exercised more than two days in a row?
**THE WITNESS:** Yes.

On October 16, 2023, the family court entered an order granting Father's petition for modification after finding a substantial change in circumstances had occurred and awarded each parent equal (50-50) custody. The order stated the following:

> In addressing the issue of modification, the [c]ourt finds that evidence has been presented that a substantial change of circumstances has occurred since the entry of the last [o]rder on June 22, 2022 [sic] based on a number of pieces of testimony presented.[7] The childrens' [sic] age and discretion may not be one of a statutorily authorized firm preference, but their expressions of their feelings to the [GAL] must be considered by the [c]ourt, and accordingly, the children have expressed a clear desire to spend equal time with both parents. The [f]inal [o]rder entered on September 13, 2019 [sic] did contemplate that at some time, either by agreement or a specific finding by this [c]ourt when the children reached six [sic] years of age, that week on/week off would be appropriate for a summer schedule.[8] Testimony was elicited that confirmed [Father] has had periods of time where he has exercised more than just two consecutive visitation days. Additional testimony was elicited that confirmed certain actions by the parties have waived and/or modified, without a substantial change of circumstances and by their own actions, their de facto arrangement thereby terminating concerns surrounding the grandparents' exposure to the children.

The family court entered an amended order that addressed child support on December 19, 2023. It is from these orders that Mother appeals.

When reviewing the order of a family court, we apply the following standard of review:

---

[7] The date of the entry of the previous order was July 7, 2022.

[8] The date of the final order's entry was February 13, 2020. It ordered the parties to share week on/week off parenting during the summer when the children reached five years of age.

When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C*., No. 22-918, 2024 WL 2966177, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Mother asserts two assignments of error. She first argues that the family court abused its discretion by finding that the children's expressions to the GAL were required to be upheld by the court, contrary to West Virginia Code § 48-9-402(b)(4) (2022). In support of her argument, she contends that the court's finding that the children desired to spend equal time with both parents was clearly erroneous because the record is devoid of such fact. Additionally, she argues that even if the evidence existed, the children were not sufficiently mature to intelligently express a voluntary custodial preference as acknowledged by the GAL's testimony. West Virginia Code § 48-9-402 provides for modification without a showing of changed circumstances. It states that if the modification is in the child's best interest and the modification "[i]s necessary to accommodate the reasonable and firm preferences of a child who is under the age of 14 and, in the discretion of the court, is sufficiently matured that he or she can intelligently express a voluntary preference[,]" then a court may modify any provisions of the parenting plan without a showing of changed circumstances. W. Va. Code § 48-9-402(b)(4).

In the instant case, the children were five years of age at the time of the final hearing. Upon review, the GAL testified that her discussions with the children indicated that they were not mature. She testified that the children preferred spending time with Mother, and when she asked the children what they did not like about Father, they stated that he did not let them rip out pages of coloring books. She then testified that she "didn't interview them for a very long time just because of their age."

The family court's order stated that the children's "expressions of their feelings to the [GAL] must be considered . . . the children have expressed a clear desire to spend equal time with both parents." While we commend the court for considering the children's feelings, West Virginia Code § 48-9-402(b)(4) requires a family court to analyze whether children under the age of fourteen are "sufficiently matured" that they can "intelligently express a voluntary preference" before the court can modify a parenting plan to accommodate their preference without a showing of a change in circumstances. The Supreme Court of Appeals has previously recognized that a child's preferences with regard to custody matters should be considered when that child's age and maturity level so warrants, even if the child has not yet reached the age of fourteen. *See State ex rel. Jeanne U. v. Canady*, 210 W. Va. 88, 96–97, 554 S.E.2d 121, 129–30 (2001) ("While Jordan is

not yet fourteen years of age, his age and maturity level should be considered, and his desires concerning visitation with his biological father must be examined.")

The Supreme Court of Appeals of West Virginia has said that to properly review an order of a family court:

> [t]he order must be sufficient to indicate the factual and legal basis for the [family court's] ultimate conclusion so as to facilitate a meaningful review of the issues presented. *Province v. Province*, 196 W. Va. 473, 483, 473 S.E.2d 894, 904 (1996); *see also Nestor v. Bruce Hardwood Flooring L.P.*, 206 W. Va. 453, 456, 525 S.E.2d 334, 337 (1999) ("[O]ur task as an appellate court is to determine whether the circuit court's reasons for its order are supported by the record.") "Where the lower tribunals fail to meet this standard – *i.e.* making only general, conclusory, or inexact findings – we must vacate the judgment and remand the case for further findings and development." *Province*, 196 W. Va. at 483, 473 S.E.2d at 904.

*Collisi v. Collisi*, 231 W. Va. 359, 364, 745 S.E.2d 250, 255 (2013). Upon review, the family court's order does not contain sufficient findings as to how the children have sufficiently matured so that they can intelligently express a voluntarily preference. Thus, we conclude that the family court's order contains insufficient finding and analysis to provide for a meaningful appellate review. Therefore, this issue must be remanded for further development through an amended order.

Next, Mother argues that the family court erroneously found a substantial change of circumstances had occurred when none had been pled. She contends that the basis of Father's petition was that the children could reach her medication, which was unfounded. However, Father and the GAL argue that the substantial change of circumstances was that the children had started attending kindergarten. Nonetheless, the court's order is devoid of any analysis pertaining to the children's schooling, or any other language articulating the substantial change.

The statute governing a modification of a parenting plan applicable to this assignment of error provides that:

> Except as provided in § 48-9-402 or § 48-9-403 of this code, a court shall modify a parenting plan order if it finds, on the basis of facts that were not known or have arisen since the entry of the prior order and were not anticipated in the prior order, that a substantial change has occurred in the circumstances of the child or of one or both parents and a modification is necessary to serve the best interests of the child.

W. Va. Code § 48-9-401 (2022). The burden is on the party seeking the modification to establish the required substantial change of circumstances. *See Corinne Z. v. Tyler M.*, No. 23-ICA-329, 2024 WL 1591071, at *2 (W. Va. Ct. App. Feb. 27, 2024) (memorandum decision) (It was mother's burden, as the party seeking the modification of custody, to establish that a substantial change of circumstances had occurred); *see also Goff v. Goff*, 177 W. Va. 742, 356 S.E.2d 496 (1987) (the burden of proof is on the parent seeking to modify the parenting plan).

To justify modifying a parenting plan upon a showing of changed circumstances pursuant to West Virginia Code § 48-9-401, the Supreme Court has held that the three following criteria must be established:

> *First*, the facts relevant to the change in circumstances must not have been "known" or "anticipated" in the order that established the parenting plan. *Ibid. Second*, the change in circumstances, whether "of the child or of one or both parents[,]" must be "substantial[.]" *Ibid. Third*, the modification must be "necessary to serve the best interests of the child."

*Jared M. v. Molly A.,* 246 W. Va. 556, 561, 874 S.E.2d 358, 363 (2022). The Court went on to explain:

> "[U]nder the plain meaning of the statute, the relevant question is not whether a particular change in circumstance *could* have been anticipated, but whether the parenting plan actually did anticipate, and provide accommodation for, the particular change." *Skidmore v. Rogers*, 229 W. Va. 13, 21, 725 S.E.2d 182, 190 (2011). "The phrase 'not anticipated therein' does not mean that the change in circumstance could not have been anticipated generally, but rather that the parenting plan order does not make provisions for such a change."

*Id.* at 562, 874 S.E.2d at 364 (2022).

Here, the family court's order fails to set forth any analysis regarding those considerations. Although the family court's order states that a substantial change of circumstances had occurred since the entry of the last modification order, the order fails to specify what change had arisen since the entry of the prior order that had not previously been anticipated. Moreover, the order fails to analyze or even address whether the modification was in the children's best interest.

Based on the record, the children were four years of age when the July 7, 2022, order was entered. In her brief to this Court, the GAL acknowledged that all prior parenting plans considered the school calendar when scheduling parenting time, and the record indicates that the children had attended daycare prior to attending school. Pursuant to West Virginia Code § 48-9-401, the family court's order contains insufficient information to

explain its ruling. "This Court cannot emphasize how essential it is for family courts to not only articulate their findings, but also explain their reasons for making such findings." *Dusti A. v. Jonathan A.*, No. 23-ICA-125, 2024 WL 794624, at *5 (W. Va. Ct. App. Feb. 27, 2024) (memorandum decision). Thus, we conclude that because the family court's order contains insufficient findings of fact and conclusions of law to justify its custodial determination, we are unable to provide a meaningful appellate review. *See, e.g., Miranda B. v. Timothy O.*, No. 22-ICA-130, 2023 WL 1463825, at *2 (W. Va. Ct. App. Feb. 2, 2023) (memorandum decision).

Accordingly, we vacate and remand the October 16, 2023, and December 19, 2023, orders to the family court. On remand, the family court shall enter an order containing sufficient findings of fact and conclusions of law analyzing the children's preference and maturity level, and whether Father has met his burden of producing evidence showing a substantial change of circumstances, consistent with this decision. The family court's October 16, 2023, and December 19, 2023, orders are hereby converted to temporary orders until the entry of a new final order consistent with this decision is issued by the family court.

Vacated and Remanded with Directions.

**ISSUED:** September 4, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

9