IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

FILED
**August 29, 2025**
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**BRITTANY M.,**
**Petitioner Below, Petitioner**

**v.) No. 25-ICA-13**   (Fam. Ct. Upshur Cnty. Case No. FC-49-2024-D-17)

**BRYAN M.,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Brittany M.[1] ("Wife") appeals the Family Court of Upshur County's December 10, 2024, final divorce order. Respondent Bryan M. ("Husband") responded with two cross-assignments of error.[2] Wife filed a reply. The primary issues on appeal are custody, equitable distribution, and attorney's fees.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the family court's decision but no substantial question of law. For the reasons set forth below, a memorandum decision affirming, in part, vacating, in part, and remanding for further proceedings is appropriate under Rule 21 of the Rules of Appellate Procedure.

By way of background, the parties were married on June 4, 2011. They share one child who was born in 2015 and who has special needs. Wife filed for divorce on January 23, 2024, along with a proposed parenting plan requesting shared decision-making authority (with Wife being the sole decision-maker for school-related activities due to her daily involvement in the child's care),[3] that Father have parenting time every other Saturday and Sunday from 8:30 a.m. to 6:00 p.m., and alternating holiday time. Husband's

---

[1] To protect the confidentiality of the juvenile involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Wife is represented by Amy L. Lanham, Esq., Family Law Associates. Husband is self-represented.

[3] Wife transported Child to all medical appointments, autism services, and participated in weekly family trainings for caregivers.

proposed parenting plan requested shared decision-making, with Wife having all parenting time except for one day each weekend from 7:30 a.m. to 4:30 p.m. and two hours each Wednesday evening from 4:00 p.m. to 6:00 p.m. Husband also requested two, three-day weekends during the summer, alternating holidays, and asked to be the designated residential parent every year for tax purposes.

On May 7, 2024, Husband filed supplemental disclosures, which included the real estate purchase agreement for the marital home and the mortgage loan information, showing that the marital home was purchased for $225,277.00 on September 17, 2010, prior to the parties' marriage.

On June 11, 2024, a temporary order was entered setting Husband's child support obligation at $741.69 per month, effective July 1, 2023. On June 24, 2024, an Order Pendente Lite was entered stating that the parties reached an agreement on all issues except the allocation of parenting time. The family court granted Husband initial parenting time in two-hour increments during the week with additional time on Saturday and added one overnight visit starting on June 28, 2024. Husband was also directed to participate in Applied Behavior Analysis ("ABA") training to better assist with caretaking, which he completed. Wife was granted exclusive use and possession of the marital home and was ordered to pay the mortgage and utilities.

Husband filed a second proposed parenting plan on July 26, 2024, wherein he requested a 2/2/5 visitation schedule with Wife having Monday and Tuesday night, Husband having Wednesday and Thursday night, and the parties rotating weekends.

The final hearing was held over a series of three days, September 25-26, 2024, and October 1, 2024. During the proceedings, Elizabeth Simons testified as an expert witness in behavioral analysis and adapted curricula. Tamara Smithson, an Upshur County Board of Education speech pathologist, testified that she sees the child every morning and that the child requires consistency in her daily routine. Rhonda Bennett, one of the child's teachers, testified as an expert witness in special education. All experts testified that the child required a consistent routine, and that Wife had been the child's primary caretaker.

Wife testified that after the child had overnights with Husband, her behavior changed, and she began to regress due to the changes in her routine. She further testified that during their marriage, Husband controlled all finances, only allotted her $300.00 per month for groceries, committed domestic violence against her, and called her names in front of the child. Husband testified that he has attended the child's Individualized Education Program ("IEP") meetings, has twelve weeks of unpaid Family Medical Leave Act ("FMLA") leave that he could use to help provide childcare, and expressed that he wished he had the ability to attend all the child's appointments and school activities.

2

Regarding the marital home, Husband argued that it was his separate property and that the court should consider the value of the home at the time of purchase, which was approximately $229,000.00, as opposed to the value at the time of separation, which was $400,000.00. Wife, in contrast, argued that the home was purchased in anticipation of marriage and that it should be considered marital property. Wife objected to the consideration of the purchase price of the home, arguing that it was not properly introduced into evidence.

The family court entered the final order on December 10, 2024, which included the following relevant findings of fact and conclusions of law.

- The only applicable limiting factor was West Virginia Code § 48-9-209(f)(2)(b), which addresses children with special needs.[4]
- Husband became very involved with the child after the parties separated.
- The 50-50 presumption[5] was not rebutted.
- The court's sixty-day phased-in parenting schedule was based on Husband's work schedule and the child's needs, and the staff at ABA should be consulted regarding how to implement plan.
- The parenting plan will result in a 3/4/4/3 parenting plan with Husband having most weekends.
- The parties will share decision-making authority.
- Husband shall pay $487.85 per month in child support, effective December 1, 2024.
- Husband will pay Wife $518.61 per month in rehabilitative spousal support for twenty-four months.
- Wife had sixty days to move out of the marital home.
- Husband will retain exclusive use and possession of the marital home, effective December 1, 2024.

---

[4] West Virginia Code § 48-9-209 (2024) provides a list of factors that family courts must consider when ruling on parenting time.

[5] West Virginia Code § 48-9-102a (2022) addresses the 50-50 parenting presumption and states as follows:

There shall be a presumption, rebuttable by a preponderance of the evidence, that equal (50-50) custodial allocation is in the best interest of the child. If the presumption is rebutted, the court shall, absent an agreement between the parents as to all matters related to custodial allocation, construct a parenting time schedule which maximizes the time each parent has with the child and is consistent with ensuring the child's welfare.

- Each party shall pay their own attorney's fees.

Regarding the marital home, the family court conducted a passive appreciation analysis using the home's value at the date of separation to determine its value and did not consider any of the information contained in Husband's financial disclosure. Under this analysis, the family court held that Husband owed Wife $145,045.00 to equalize equitable distribution. As to the value of the marital home, Husband was given credit for the $20,000 that he paid as a down-payment on the property, $805 in agreed *Conrad* credits,[6] and $3,900 for mortgage payments that Wife failed to pay while she resided in the home post-separation. Upon final calculation, Husband was ordered to pay Wife $120,340.00 in equitable distribution and was given one year from October 1, 2024, to complete the payment. The court noted in its order that it lacked the necessary information to conduct a full analysis as to the value of the marital home, and stated on the record that, as a result, Wife was unfairly receiving an extra $100,000 in equitable distribution.

It is from the December 10, 2024, final order that Wife now appeals. For these matters, we apply the following standard of review:

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Wife raises four assignments of error and Husband asserts two cross-assignments of error. To succinctly address the issues on appeal, we will address Husband's cross-assignments of error with Wife's corresponding assignment of error.

In Wife's first assignment of error, she asserts that the family court abused its discretion by finding that the 50-50 presumption was not rebutted based on the evidence presented regarding the history of care for the child, Husband's work schedule, the child's special needs, and Husband's abusive and controlling behavior toward her during the marriage. We disagree. Our review of the record reflects that the family court considered the child's best interest, that Husband completed ABA training and became very involved in the child's life after the parties separated, and the court determined that the only

---

[6] *See Conrad v. Conrad*, 216 W. Va. 696, 612 S.E.2d 772 (2005) (holding that the recoupment of payment of marital debt by one party prior to the ultimate division of marital property is permitted upon final equitable distribution order).

4

applicable limiting factor was West Virginia Code § 48-9-209(f)(2)(b), which states, "[i]n determining whether the presumption for an equal (50-50) allocation of physical custody has been rebutted, a court shall consider all relevant factors including [. . .] [w]hether the child [. . .] [h]as special needs, a chronic illness, or other serious medical condition and would receive more appropriate care under another custodial allocation." Because Husband became very involved in the child's life and complied with the court's recommendation that he complete ABA training, we cannot conclude that the family court abused its discretion by finding that the 50-50 parenting presumption had not been rebutted. Therefore, we affirm the family court on this issue.

In her second assignment of error, Wife contends that the family court abused its discretion by failing to grant her weekend parenting time. We disagree. The family court's order states that the parties will operate on a phase-in 3/4/4/3 visitation schedule with Husband having *a majority* of weekend time. The parenting plan was based upon the child's comfort level, Husband's work schedule, and provided Wife with some weekend visitation. Therefore, given the deference afforded to family courts in these matters, we cannot conclude that there was an abuse of discretion regarding weekend parenting time. *See Jacob H. v. Siera G.*, No. 24-ICA-147, 2024 WL 4787833, at *3 (W. Va. Ct. App. Nov. 14, 2024) (memorandum decision) (internal citations and quotations omitted) ("A family court's decision is entitled to significant deference.")

In Wife's fourth assignment of error, she argues that the family court abused its discretion by failing to award her attorney's fees and costs. On this issue, the family court was required to conduct an analysis pursuant to Syl. Pt. 4, *Banker v. Banker*, 196 W. Va. 535, 474 S.E.2d 465 (1996), which states:

> In divorce actions, an award of attorney's fees rests initially within the sound discretion of the family law master and should not be disturbed on appeal absent an abuse of discretion. In determining whether to award attorney's fees, the family law master should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request.

However, in the case at bar, the family court conducted no *Banker* analysis, but rather, held that each party would be responsible for their own attorney's fees "based upon the unfair equitable distribution." Therefore, we vacate the court's ruling on this issue and remand this matter to the family court with directions to conduct the requisite *Banker* analysis and to decide this issue based upon that analysis.

5

Husband raised two cross-assignments of error on appeal, which we will consolidate because they are similar. *See generally Tudor's Biscuit World of Am. v. Critchley,* 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (stating that "the assignments of error will be consolidated and discussed accordingly").

Husband asserts that the family court's erroneous refusal to consider his financial disclosures regarding the value of the marital home resulted in him not being awarded credit for the cash down-payment and mortgage payments made prior to the parties' marriage, which resulted in inequitable distribution of approximately $100,000.00 to his detriment. We agree with Husband on this issue. Rule 13(a) of the Rules of Practice and Procedure for Family Court states, "[t]the petitioner and respondent shall file completed financial statements with the circuit clerk [. . .]." Further, West Virginia Code § 48-7-201 (2001) states, "[i]n all divorce actions and in any other action involving child support, all parties shall fully disclose their assets and liabilities. . . ." Husband complied with the requirement to submit full financial disclosures, including his ongoing duty to submit supplemental financial disclosures, which were used to determine his income for both child and spousal support. A review of the record reveals that the evidence necessary for an evaluation and calculation pursuant to *Collisi v. Collisi*, 231 W. Va. 359, 745 S.E.2d 250 (2013) was contained in Husband's financial disclosures.[7] As these disclosures operate as evidence, they are entitled to review and an opportunity for cross-examination. The family court was required to review the supplemental financial disclosure or exercise its authority to "compel and supervise the production of evidence" pursuant to West Virginia Code § 51-2A-7 (2013). Because the family court did not compel and/or consider the evidence of record necessary for equitable distribution, we vacate the ruling on this issue and remand the matter with directions to consider all of Husband's financial disclosures in determining equitable distribution.

Lastly, in Wife's third assignment of error, she argues that the family court abused its discretion by permitting Husband to have one year to pay her share of equitable distribution and by failing to award her interest on the payment. Because we are remanding the case to the family court for further consideration of Husband's financial disclosures as to equitable distribution, we decline to rule on this assignment of error. However, if the family court ultimately decides to again grant Husband a term of years to make his equitable distribution payment to Wife, it must follow the law set forth in *Bettinger v. Bettinger*, 183 W. Va. 528, 396 S.E.2d 709 (1990) (holding where the value of an equitable distribution asset is payable over a term of years, interest should be paid at the going rate in the absence of some special hardship factor shown by the obligor).

---

[7] Although the information was contained in Husband's financial disclosures, we note that the family court inquired of the parties about the documentation and it was not produced to the court.

6

Accordingly, we affirm, in part, vacate, in part, and remand the December 10, 2024, order with directions to the family court for further proceedings consistent with this decision.

Affirmed, in part, Vacated, in part, and Remanded with Directions.

**ISSUED:** August 29, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White