IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**February 27, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**PAMELA GRIFFITH,**
**Petitioner Below, Petitioner**

**v.) No. 25-ICA-273**   (Fam. Ct. Ritchie Cnty. Case No. FC-43-2024-D-36)

**LARRY GRIFFITH,**
**Respondent Below, Respondent**


**MEMORANDUM DECISION**

Petitioner Pamela Griffith ("Wife") appeals the Family Court of Ritchie County's June 9, 2025, Final Order and June 11, 2025, Order Regarding Motion to Reconsider Final Order.[1] In those orders, the family court, among other things, distributed the parties' marital property, ordered each party should be responsible for their own attorney fees, and denied Wife's claim for spousal support. Respondent Larry Griffith ("Husband") did not participate in this appeal.[2]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering Wife's arguments, the record on appeal, and the applicable law, this Court finds that there is error in the family court's decision but no substantial question of law. For the reasons set forth below, a memorandum decision vacating the family court's order, in part, and remanding for further proceedings consistent with this decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties were married in 1981 and share two children born of the marriage who have reached the age of majority. On or around July 26, 2024, Wife filed her petition for divorce on the basis of irreconcilable differences. On August 27, 2024, Husband filed his answer admitting irreconcilable differences.

In her financial statement, Wife listed real estate, a 2022 Mitsubishi Outlander, a Toyota Tacoma, household furnishings and appliances, a checking account with a balance of $450, a joint checking account with a balance of $2,400, $1,200 per month in social

---

[1] Wife is represented by C. Blaine Myers, Esq. Husband was represented by counsel below.

[2] We recognize our limited and circumspect review of a family court order in an uncontested appeal, like this one, where the respondent fails to participate on appeal to support the order.

security benefits, and separate property in the form of a fractional interest in real estate in Doddridge County. The financial statement also noted that Wife had credit card debt of approximately $30,000. Wife listed her monthly expenditures at $2,486 per month. Husband did not file the required financial statement.

On October 18, 2024, the family court conducted a preliminary hearing at which both parties and their counsel appeared; counsel for Husband appeared telephonically. During this hearing, Husband acknowledged receiving two pensions, in addition to social security benefits. The parties also agreed they owed marital debt to Long Reach Credit Union. Thereafter, the family court entered a temporary order that, among other things, ordered the marital home appraised and that the parties share the cost of the same, required Husband to pay Wife $450 per month, which represented Wife's share of marital pension benefits, plus $350 per month in temporary spousal support, and ordered Husband to file a sworn financial statement. Further, the court ordered both parties to file inventories of the tangible personal property each had in their possession, and to provide copies of documentation of all relevant financial matters including bank account statements, investment account statements, and any statements regarding debts owed in advance of the final hearing. The court deferred ruling on Wife's request for attorney's fees until the final hearing.

On or about December 3, 2024, Wife filed a motion to compel and request for interim award of attorney fees alleging that Husband refused to pay his share of the appraisal on the marital home, refused to provide an itemization of his personal property, failed to file a sworn financial statement, and failed to provide documentation of his bank accounts, investment accounts, and their balances.

On January 31, 2025, Husband filed his financial statement in which Husband disclosed that he received $1,353.44 per month in pension benefits, $2,177.10 per month from social security, and owned numerous firearms and bows. Husband also indicated that the parties had marital debt owed to Union Plus in the amount of $2,375.68, and to Sears in the amount of $7,536.37. The statement also listed various monthly expenses. However, Husband failed to list any financial accounts or their balances.

On February 10, 2025, following the hearing on Wife's motion to compel and for attorney's fees, the family court entered a status order requiring Husband to reimburse Wife for his one-half share of the cost of the home appraisal and to provide documentation of his pension benefits and bank account information. The family court also ordered Wife to file a supplemental financial statement. The status order also set the final hearing for April 10, 2025.

On or around April 1, 2025, Wife filed a petition for contempt alleging that Husband failed to pay his half of the appraisal cost, failed to provide documentation of his pension benefits, and that while he filed a sworn financial statement, he did not list any bank or

2

investment account information. However, Wife asserted that she subpoenaed records from Huntington Bank which revealed accounts with balances of $2,583.40 and $19,838.17.

At some point, Wife filed her proposed equitable distribution calculation. The document did not include a full explanation of the figures listed but concluded that Husband owed wife an equalization payment in the amount of $7,560, plus $1,600 representing the difference in what Wife should have received as a result of her share of Husband's pension benefits versus what she received as a result of the preliminary order. Wife also filed documents that showed that her monthly income was $1,900 while her monthly expenses totaled $3,078. Of note, Wife listed monthly expenses of $548 in credit card payments and a future estimated rental expense of $600 per month, as she did not pay rent at that time because she was temporarily staying in the home of a friend during the pendency of the divorce action. Wife also filed a summary of her attorney's fees that totaled $10,099.35.

On May 1, 2025, the family court held a final hearing. Both parties appeared with counsel and were placed under oath. Most of the testimony regarding the finances of the parties was equivocal and confusing. However, Husband testified that Wife incurred a $7,000 credit card debt, which she paid off with a loan from a bank and quickly incurred $7,000 in debt again on the credit card. On cross examination, Wife admitted that her credit card debt was only in her own name and she was not sure if Husband was aware of the debt, though it was incurred during the marriage. Wife also testified that the parties had an unsecured loan from Long Reach Federal Credit Union in the amount of approximately $18,000 that had a monthly payment of approximately $380 that she could no longer afford to pay. Wife admitted on cross-examination that she was no longer paying the full amount on the loan and did not tell Husband that she was no longer paying the loan. Wife also testified that she owed approximately $36,000 on her Mitsubishi Outlander which had a monthly payment of $650. She further testified that although her doctor told her to stop working while receiving cancer treatment during the pendency of the divorce, she had since returned to working part-time as a substitute teacher's aide earning approximately $700.00 per month.  Wife also testified that she was then temporarily living alone at a friend's home by herself, rent free, but would like to eventually find her own place, which she estimated would cost $600 per month. Husband remained living in the marital home on which the parties owed no debt. Husband testified that he desired to buy Wife out of the marital home for $75,000, which represented roughly half of the value of the home. At the end of the hearing, the family court judge made no rulings and directed both parties to file proposed orders.

On June 9, 2025, the family court entered its final order. In that order, the family court ordered that Husband was to buy Wife's interest in the marital home for $75,000 within 90 days or the home was to be placed on the open market and the net proceeds were to be divided by the parties. Regarding the Long Reach loan, the court held that each party would be responsible for one-half of the monthly payment until the loan was repaid. The

court also ordered that Wife was entitled to half of Husband's UMWA pension, which equated to $650 per month. As to spousal support, the family court noted that Wife, then 67 years old, had been cleared to return to work, worked only two half days per week, and paid no rent. The family court also noted that of Wife's $3,078 monthly expenses, $548 was attributed to credit card payments, which were not "permanent" and could be reduced or eliminated upon Wife's receipt of payment for her one-half interest in the marital home. Further, the family court held that the $600 per month listed as a rental expense was "speculative"; therefore, the court would not consider that expense.

Accordingly, the family court removed the credit card debt payments and estimated monthly rental expense from Wife's monthly expenses and noted that the same could be covered by her social security benefits and her share of Husband's pension. Further, the family court noted that Husband would incur the additional monthly expense of the loan to buy Wife out of her interest in the marital home. As such, the family court found that no spousal support should be awarded. Regarding attorney fees, the family court found that after Husband paid the sums required by the order, he would lack the financial ability to pay the Wife's attorney fees; therefore, each party should be responsible for their own attorney fees. The family court did not award Wife an equalization payment.

On June 9, 2025, Wife moved the family court to reconsider its final order. On June 11, 2025, the family court granted, in part, Wife's motion to reconsider noting that Wife's proposed equitable distribution exhibit was confusing but ordered that Wife was entitled to receive $1,600 from Husband to account for the difference in the amount of his pension Wife was to receive from the time of the preliminary order until the time of the final order. The court further awarded Wife one-half the value of Husband's guns and crossbows, including those not previously disclosed, and one-half the cost of the appraisal of the marital home she had paid in full, totaling $2,982. The court refused Wife's request for the equalization payment. It is from this June 11, 2025, order and the June 9, 2025, final order that Wife appeals.

For these matters, we apply the following standard of review:

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Wife argues that the family court erred in its determinations regarding equitable distribution, spousal support, and attorney's fees. While we generally review matters such as this under the above quoted standard, such standards contemplate family court orders that have sufficient findings of fact and conclusions of law to facilitate meaningful appellate review. The Supreme Court of Appeals of West Virginia has said that to properly review an order of a family court,

> "[t]he order must be sufficient to indicate the factual and legal basis for the [family court]'s ultimate conclusion so as to facilitate a meaningful review of the issues presented." *Province v. Province,* 196 W. Va. 473, 483, 473 S.E.2d 894, 904 (1996); *see also Nestor v. Bruce Hardwood Flooring, L.P.,* 206 W. Va. 453, 456, 525 S.E.2d 334, 337 (1999) ("[O]ur task as an appellate court is to determine whether the circuit court's reasons for its order are supported by the record."). "Where the lower tribunals fail to meet this standard—*i.e.* making only general, conclusory or inexact findings—we must vacate the judgment and remand the case for further findings and development." *Province,* 196 W. Va. at 483, 473 S.E.2d at 904.

*Collisi v. Collisi*, 231 W. Va. 359, 364, 745 S.E.2d 250, 255 (2013). Here, the family court's orders on appeal do not contain sufficient findings of fact and conclusions of law to adequately indicate the factual and legal basis for the family court's ultimate conclusions in regard to equitable distribution, spousal support, or attorney's fees.

In regard to equitable distribution, West Virginia Code § 48-7-103 (2001) provides that in the absence of a valid agreement, the family court shall equally divide all marital property between the parties but may alter the distribution after considering the statutory factors outlined in the statute. *See* W. Va. Code § 48-7-103. In Syl. Pt. 2 of *Stuck v. Stuck*, 218 W. Va. 605, 625 S.E.2d 367 (2005), the Supreme Court of Appeals of West Virginia held:

> "Equitable distribution ... is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets. The third step is to divide the marital estate between the parties in accordance with the principles contained in [former] W.Va. Code, 48-2-32 [now W. Va. Code § 48-7-103]." Syllabus Point 1, *Whiting v. Whiting,* 183 W. Va. 451, 396 S.E.2d 413 (1990).

Here, although the family court found that the marital home, Husband's retirement accounts, and the Long Reach debt were marital property, the family court's orders are devoid of any analysis of West Virginia Code § 48-7-103 in regard to the division of the

5

remaining marital property.[3] More specifically, the family court's orders do not clearly provide any analysis of the parties' other assets and debts, such as the various bank accounts, credit card debts, debts owed to Union Plus and Sears, personal property, or the parties' vehicles and their associated debt or value. Accordingly, the family court's orders failed to adequately indicate the factual and legal basis for the family court's ultimate conclusion in regard to equitable distribution. Therefore, we vacate and remand for further analysis on equitable distribution.

Turning to the issue of spousal support, the Supreme Court of Appeals of West Virginia has explained that as long as the family court fully considers the mandatory statutory factors contained in West Virginia Code § 48-6-301 (2018), and the award of spousal support is within the parameters of reasonableness, a reviewing court should not disturb the award on appeal. *See Mulugeta v. Misailidis,* 239 W. Va. 404, 410, 801 S.E.2d 282, 288 (2017) (citation omitted). Here, the family court's orders do not reflect that the family court considered any of the mandatory factors contained in West Virginia Code § 48-6-301. Accordingly, the family court's orders failed to adequately indicate the factual and legal basis for the family court's ultimate conclusion to deny Wife's claim for spousal support.[4]

Regarding attorney's fees, the family court is required to conduct an analysis pursuant to Syl. Pt. 4, *Banker v. Banker*, 196 W. Va. 535, 474 S.E.2d 465 (1996), which states:

> In divorce actions, an award of attorney's fees rests initially within the sound discretion of the family law master and should not be disturbed on appeal absent an abuse of discretion. In determining whether to award attorney's fees, the family law master should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request.

However, in the case at bar, the family court did not conduct any *Banker* analysis. Accordingly, the family court's orders failed to adequately indicate the factual and legal basis for the family court's ultimate conclusion to deny Wife's request for attorney's fees, and the matter is vacated and remanded with instructions for the family court to conduct the requisite *Banker* analysis.

---

[3] The Court notes that the family court's final order indicates that the disposition of the marital home was accomplished by agreement of the parties.

[4] We note that Wife sought only $350.00 per month in spousal support.

6

Accordingly, based on the foregoing, we vacate the family court's June 9, 2025, Final Order and June 11, 2025, Order Regarding Motion to Reconsider Final Order as they pertain to the issues of equitable distribution, spousal support, and attorney's fees and remand this matter to the family court with instructions to issue an order containing sufficient findings of fact, conclusions of law, and legal analysis as specifically detailed herein to facilitate meaningful appellate review and to conduct such further proceedings as it deems necessary to accomplish that end.

Vacated, in part, and Remanded, with instructions.

**ISSUED:** February 27, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White