525 S.E.2d 334

**Dale G. NESTOR, II, Plaintiff Below, Appellant,**

v.

**BRUCE HARDWOOD FLOORING, L.P., Defendant Below, Appellee.**

**No. 26430.**

Supreme Court of Appeals of West Virginia.

Submitted Nov. 3, 1999.

Decided Dec. 6, 1999.

---

Cynthia S. Gustke, Esq., The Law Offices of Cynthia S. Gustke, PLLC, Elkins, West Virginia, Attorney for Appellant.

Frank P. Bush, Jr., Esq., Bush & Bush, Elkins, West Virginia, Attorney for Appellee.

Edward Bograd (Pro Hac Vice), Frederick M. Thurman, Jr. (Pro Hac Vice), Shumaker, Loop & Kendrick, LLP, Charlotte, North Carolina, Attorneys for Appellee.

PER CURIAM:

The appellant, Dale Nestor, appeals a summary judgment order of the Circuit Court of Tucker County dismissing his complaint for workers' compensation discrimination against his former employer, Bruce Hardwood Floors, a division of B.H.F.G. Corporation.[1] On appeal, the appellant maintains that: (1) the circuit court erred in granting summary judgment based solely on evidence that the appellee had not previously engaged in workers' compensation discrimination; (2) the circuit court erred in granting summary judgment where the employer's termination policy is discriminatory on its face; (3) the circuit court erred in granting summary judgment on the issue of punitive damages despite evidence that the appellee acted maliciously in terminating the appellant; and (4) the circuit court erred in failing to grant the appellant's motion to amend his complaint to join the appellee's parent company as a defendant. Because we find that the summary judgment order fails to set out sufficient findings of fact under this Court's recent holding in *Fayette County Nat. Bank v. Lilly*, 199 W.Va. 349, 484 S.E.2d 232 (1997), we reverse and remand for the circuit court to enter a final order which conforms to the standard set forth in *Lilly*.

## I.

### FACTS

The appellant, Dale Nestor, was employed by the appellee, Bruce Hardwood for more than seven years. The appellant worked as a "502 machine operator" whose duties were to monitor wood flooring strips as they fed through a 502 machine, and to maintain the

---

1. According to the appellant's complaint, Bruce Hardwood Flooring, L.P., does business as Bruce Hardwood and is a division of B.H.F.G. Corpora- tion, a Tennessee corporation authorized to do business in West Virginia.

502 machine.[2] The appellant received good job evaluations.

On May 19, 1998, the appellant was injured when he attempted to remove a piece of jammed wood from the 502 machine.[3] He required four stitches in his little finger. At the hospital, the appellant filled out a workers' compensation form.[4] Upon returning to work the next day, the appellant was terminated.[5] In two subsequent meetings called to explain the appellant's termination to the other 502 machine operators, Plant Manager Darl Bolyard stated that the appellant was fired because he placed his hand in the 502 machine in violation of safety rules.[6] The employees were also warned that if they placed their hands in the path of a machine's moving parts, they would be terminated.

On September 17, 1998, the appellant filed an action in the Circuit Court of Tucker County alleging workers' compensation discrimination and failure of the appellee to enforce its own personnel policy concerning employee discipline procedures.[7] The appellee responded that the appellant was fired because he violated a safety rule. Section 10–02 of the appellee's personnel policy manual states in pertinent part:

Industry is currently experiencing far too many accidents. Investigations of industrial accidents show that the majority are caused by an employee performing an unsafe act. These violations cannot be tolerated.

An employee may be discharged immediately without prior warning for a serious violation of safety rules or instructions. The following is a partial list to help you understand the type of safety rules for which violations could be ruled serious and result in immediate discharge: ...

4. Reaching into a machine while it is running or before moving parts have stopped—for any reason....

In administering these policies, it is management's responsibility and duty to apply formal discipline in a fair and equal manner to all offenders after considering the appropriate mitigating or aggravating circumstances and the potential for injury and its severity. If it is deemed necessary, immediate discharge will take place. If less serious, steps in the progressive disciplinary program will be taken.

In deposition testimony, the appellant admitted reading this policy and being aware that the policy provided for discharge for violation of a safety rule. The appellant also explained the circumstances surrounding the accident:

tions raised by other 502 machine operators concerning the reason for the appellant's termination. Specifically, the other operators questioned why another employee, Brennon Webley, was not terminated when he was injured while operating a 502 machine. Bolyard testified that Brennon, prior to reaching into the machine, had completely stopped the machine so that no feed rolls were moving. This is not a violation of a safety rule. In contrast, when the appellant reached into the machine, the feed rolls were still moving. This is a safety rule violation.

According to Bolyard, the operators also questioned management about other employees who violated safety rules and were not discharged. Bolyard responded that he had no knowledge of similar safety violations.

2. According to deposition testimony, the purpose of the 502 machine is to transform lumber into tongue and groove flooring.

3. It is the position of management that Dale Nestor placed his hand in the 502 machine in the path of moving parts in violation of a safety rule, and for this reason he was fired. In his brief to this Court, the appellant contests the claim that he placed his hand in the path of moving parts.

4. Prior to the appellant's injury on May 19, 1998, he had not suffered any other work-related injuries while employed by the appellee.

5. According to deposition testimony, the decision to discharge the appellant was made after a meeting held by Production Supervisor Kimberly Jo Barrick, Production Superintendent Raymond ·N. Bennet, Jr., and Personnel/Safety Director John B. Hardin.
By letter dated July 29, 1998, the appellant's attorney demanded pursuant to W.Va.Code § 23–5A–1 that the appellee reinstate the appellant. The appellee declined to meet this demand.

6. According to Plant Manager Darl Bolyard, these meetings were called in response to ques-

7. The circuit court dismissed the appellant's second count of failure of the appellee to enforce its personnel policy because the circuit court found virtually no evidence of an employment contract. The circuit court concluded that the appellant was an at-will employee. The appellant does not appeal the dismissal of this count.

We had a hang up in the machine. I stopped the machine, shut the top and bottom head off. I pushed the reverse button and tried to back the hang up out of the machine. Some of the hang up come [sic] out, and there was a short piece that didn't. It was in between the feed rolls. I raised the feed rolls, and I grabbed the piece of wood that was between them, and when I grabbed it, the back roll got ahold [sic] of the piece of wood, too, and it pulled my hand through the back roll.

The appellee's immediate supervisor, Kimberly Barrick, testified that the appellant told her that "[h]e stuck his hand in the machine to get that piece of wood while the feed roll was still moving."[8] Further Zendall Mark Lanham, another 502 operator at the appellee's plant, testified that the appellant told him that he placed his hand inside the machine while the rolls were still barely moving.

On December 23, 1998, the appellant filed a motion to amend his complaint to include Armstrong World Industries, the appellee's parent company. On February 16, 1999, the appellee moved for summary judgment and, in the alternative, partial summary judgment on the issue of punitive damages. By order of March 29, 1999, the circuit court granted the appellee's motion for summary judgment. The issue of amending the complaint was not addressed in the circuit court's order.

## II.

### DISCUSSION

The appellant raises several assignments of error. The only issue that we address, however, is the appellant's contention that the circuit court's order contains insufficient findings of fact and conclusions of law. We stated in syllabus point 3 of *Fayette County Nat. Bank v. Lilly*, 199 W.Va. 349, 484 S.E.2d 232 (1997):

Although our standard of review for summary judgment remains de novo, a circuit court's order granting summary judgment must set out factual findings sufficient to permit meaningful appellate review. Findings of fact, by necessity, include those facts which the circuit court finds relevant, determinative of the issues and undisputed.

We explained that "[t]his Court's function, as a reviewing court is to determine whether the stated reasons for the granting of summary judgment by the lower court are supported by the record." *Lilly*, 199 W.Va. at 353, 484 S.E.2d at 236 (footnote omitted). This Court cannot perform its function unless the circuit court's order contains both the factual and legal basis for its ultimate conclusion. In the instant case, the circuit court's order stated in pertinent part:

Upon consideration of the evidence before the Court and the arguments and briefs of counsel, the Court hereby GRANTS said motion for summary judgment against Plaintiff and in favor of Defendant as to all counts of the Complaint and as to Plaintiff's claim for punitive damages. There being no genuine issue as to any material fact, and Defendant being entitled to judgment as a matter of law, this action is hereby DISMISSED in its entirety with prejudice.

These conclusory findings are clearly insufficient for meaningful review.

The appellee asserts that remand for entry of findings of fact "would be superfluous because ... Plaintiff has failed ... to adduce any disputed material facts sufficient to overcome Bruce's properly supported motion for summary judgment." We disagree that remand for entry of findings of fact is superfluous here. Again, our task as an appellate court is to determine whether the circuit court's reasons for its order are supported by the record. This task is impossible without sufficient factual and legal findings. Contained in the record is the transcript of the March 22, 1999 hearing on the defendant's motion for summary judgment in which the circuit court set forth its rationale for granting the defendant's motion.[9] However, the

---

8. Plant Manager Darl Bolyard testified that it is his understanding that the appellant had turned the 502 machine off but its feeding rolls were still moving.

9. The circuit court found that the appellant had made a prima facie case but had failed to rebut the appellee's stated reason for the appellant's

circuit court is vague concerning the evidence upon which it relied in reaching its decision. Because of the circuit court's failure to adequately state the factual and legal reasons for its decision, this Court is unable to address the remaining assignments of error raised by the appellant.

## III.

## CONCLUSION

 We conclude, therefore, that the circuit court committed reversible error by granting summary judgment without including sufficient findings of fact and conclusions of law in its final order. Accordingly, we reverse and remand for the circuit court to include in its final order the factual and legal basis for its decision.

Reversed and Remanded.

Judge GARY L. JOHNSON, sitting by temporary assignment.

Justice SCOTT did not participate.

---

discharge. Specifically, the circuit court explained:

> I think very compelling is [appellee's personnel/safety director] Mr. Hardin's affidavit where he's saying that thirty to forty percent of the 500 employees at this facility have filed workers comp claims which would be approximately 150 employees. Most of them would be more expensive and be off time with more serious injuries than Mr. Nestor, and I think it was Mr. Webley and Mr. Zickafoose, are still there who, who were deposed and still have serious injuries. And I think the, the argument that, that Bruce has made that it would be difficult for a rational trier of fact to find, since they have had 150 other employees that have filed workers comp claims and they haven't fired them why would they all of a sudden start with Mr. Nestor when he has such a small claim.

The Circuit Court further stated:

> I don't think any of the facts ... that you cite are really that material to ... show that the reason he was fired was because he filed a workers comp claim. I think ... the evidence shows that he was fired cause [sic] he violated a safety policy and had they fired other employees or harassed other employees who filed workers comp claim, he would have a shot, but the evidence is to the contrary. And ... what doesn't make any sense is that they would pick on Mr. Nestor who had a very small workers comp claim, a very slight injury when they have all these other folks with more serious injuries. They were trying to have a chilling effect on people for a workers comp claim they ... would have made more sense to go after some of these other 150 people that have filed workers comp claims.