IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

FILED
April 22, 2024

ASHLEY N. DEEM, DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**LAURIE TINSMAN,**
**Petitioner Below, Petitioner**

**v.) No. 23-ICA-358**      (Fam. Ct. Berkeley Cnty. No. FC-02-2021-D-171)

**BRIAN TINSMAN,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Laurie Tinsman ("Wife") appeals the Family Court of Berkeley County's July 28, 2023, final order denying her spousal support from Respondent Brian Tinsman ("Husband"). The issue is whether the family court fully considered all the mandatory statutory spousal support factors in making its determination. Husband responded in support of the family court's decision.[1] Wife did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the family court's decision but no substantial question of law. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision. For the reasons set forth below, the family court's decision is vacated, and this case is remanded for further proceedings consistent with this decision.

The parties were married in June 2002 and divorced by Final Divorce Order entered on July 20, 2021. Two children were born of the marriage.[2] Prior to the marriage, Wife worked for approximately ten years but became a stay-at-home-parent once the parties were married. In 2007, Wife began receiving disability payments.

The parties purchased a home in Martinsburg, West Virginia in 2007. Throughout the entirety of the marriage, Wife took care of the children, the home, and the bills while Husband was away working as a truck driver. Testimony revealed that Husband was rarely home due to his occupation.

---

[1] Both parties are self-represented.

[2] The youngest child was born in March of 2004. The record is devoid of the oldest child's age but indicates that she is an emancipated adult.

1

In November of 2019, the parties separated, and Wife remained in the marital home with the parties' daughters. During the separation, Husband voluntarily paid half of the mortgage payment on the home since his children continued to reside there. In March of 2021, Wife filed a divorce petition in the Family Court of Berkeley County.

During an initial divorce hearing on June 8, 2021, the family court informed the parties that due to the circumstances of their case, Husband would be responsible for paying spousal support unless the parties reached an agreement. The court further informed the parties that Husband would be required to pay child support for their youngest daughter until she reached eighteen or graduated from high school.

On July 19, 2021, the family court held a final hearing on the divorce petition. Testimony revealed that Husband's income fluctuated and was dependent on the number of miles driven during employment. His income at the time of the final divorce hearing was approximately $54,000.00 and Wife's sole income was her monthly disability check. Using the child support guidelines, Husband was required to pay $530.00 per month; however, Wife agreed to accept $450.00 instead since Husband was voluntarily paying half of the mortgage payment. Because Husband was making child support and mortgage payments, Wife agreed to hold her request for spousal support in abeyance. She also agreed to assume $10,000.00 in marital credit card debt since the cards were in her name.

The Final Divorce Order was entered on July 20, 2021. The family court awarded primary custody of their youngest child to Wife. Husband could have custodial time as he and the child agreed. Upon agreement, child support was set at $450.00 per month and Wife was awarded exclusive use of the marital home. The parties agreed to split the mortgage, taxes, and insurance on the home until July of 2025, when the house would be put on the market and the proceeds split equally, unless the parties agreed otherwise. Wife reserved her right to request spousal support at a later date.

In early 2022, Wife filed a petition for spousal support on the assumption that child support would cease on March 22, 2022, the youngest child's eighteenth birthday. The family court held a hearing on March 15, 2022, and informed the parties that child support continued as long as the child was enrolled in school and living with a parent. Wife then agreed to continue holding her request for spousal support in abeyance because she was still receiving child support and half of the mortgage payments. Because she was still receiving those payments from Husband, Wife ultimately agreed to dismiss her pending request for spousal support at a hearing on July 25, 2022. However, Wife reserved the right to refile her request for spousal support once Husband's child support obligation ended.

On April 24, 2023, Wife filed a motion to modify spousal support,[3] contending that spousal support was necessary since her only income is her disability check; the parties' adult children live with her; she is responsible for groceries, water, electric, oil, yardwork, and house maintenance; she has yet to pay off the remaining credit card debt from the marriage; and she is responsible for half of the mortgage payment. Wife asserted that although she lives a modest life, she is unable to afford her monthly expenses solely on her disability check.

The family court held a final hearing on Wife's motion to modify spousal support on July 6, 2023.[4] Testimony and W-2 forms revealed that Husband's current yearly income as a truck driver was approximately $39,000.00 and Wife's sole income was her monthly $1,503.10 disability check. Testimony further revealed the following: the parties lived together as husband and wife for seventeen years and were married for nineteen years; the parties' adult children live with Wife; Wife regrets assuming the marital credit card debt in the divorce; each party has a high school diploma; Wife is fifty-nine years old and Husband is fifty-five years old; the parties did not have an elaborate lifestyle during their marriage and lived paycheck to paycheck; Husband remains a truck driver; Husband was regularly absent during the marriage due to his employment; Wife was a stay-at-home-parent and took care of the children, house, and bill payments for the entirety of the marriage; Wife is disabled and started receiving disability payments in 2007; Wife is struggling financially; Husband ceased paying child support in June of 2023; it would be hard on Husband to pay spousal support since he is already paying half of the mortgage payment; the parties' youngest daughter is now nineteen and attends trade school; and Husband agreed to pay half of the mortgage until 2025 because their youngest daughter turns twenty-one in 2025 and he thought it would give her time to get on her feet.

On July 28, 2023, the family court entered a final order denying Wife's motion for spousal support. In its final order, the family court made the following findings: Husband agreed to pay half of the mortgage for an extended period of time in lieu of spousal support; the parties separated after seventeen years of marriage; Wife receives $1,500.00 per month in disability; Husband's monthly gross income is $3,250.00; Wife did not work during the marriage and began receiving disability in 2007; Wife is fifty-nine years old and Husband is fifty-five years old; no evidence was presented regarding the parties' education; Wife

---

[3] The record indicates that although Wife filed a motion to *modify* spousal support, it appears that it was an initial motion for spousal support since the Final Divorce Order stated that Wife was holding her request for spousal support in abeyance and there had not been any previous spousal support order in place.

[4] All prior proceedings were held before Judge Sally Jackson, who is now retired. The final hearing on Wife's modification of spousal support was heard by Judge Lyndsey W. Matschat.

did not forego any education or employment opportunities during the marriage; the parties lived paycheck to paycheck during the marriage; Wife cannot increase her income earning abilities; no evidence was presented regarding any contribution made by either party to the training, vocational skills, career, or earning capacity of the other party; there are no minor children; no evidence was presented regarding the tax consequences to each party; Wife testified that she will have difficulty paying her bills since she no longer receives child support; Husband testified that it would be difficult for him to pay spousal support in addition to covering half of the mortgage payment; and the adult children living with Wife are not contributing to the household. It is from the final order that Wife appeals.

For these matters, we apply the following standard of review:

> "In reviewing . . . a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syl., [in part,] *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

*Amanda C. v. Christopher P.*, 248 W. Va. 130, 133, 887 S.E.2d 255, 258 (Ct. App. Nov. 18, 2022); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of a family court order).

On appeal, Wife argues that the family court did not fully consider the mandatory spousal support factors set forth in West Virginia Code § 48-6-301 (2018) when making its determination. In support of her argument, she contends that the family court erred by failing to consider the sacrifices she made as a stay-at-home-parent during the parties' marriage, the disproportionate incomes of the parties, and Husband's earning abilities. She asserts that Husband was rarely home during their marriage due to his job and that she solely took care of the parties' home, bills, and children for over seventeen years. Wife also argues that without spousal support, she will not be able to meet her monthly expenses, which includes marital credit card debt, because her only income is from her $1,500.00 disability check.

Pursuant to West Virginia Code § 48-6-301, a family court must consider twenty specific "factors in determining the amount and duration of spousal support" to be awarded, if any, which are as follows:

(1) The length of time the parties were married;
(2) The period of time during the marriage when the parties actually lived together as husband and wife;
(3) The present employment income and other recurring earnings of each party from any source;

4

(4) The income-earning abilities of each of the parties, based upon such factors as educational background, training, employment skills, work experience, length of absence from the job market, and custodial responsibilities for children;

(5) The distribution of marital property to be made under the terms of a separation agreement or by the court . . . ., insofar as the distribution affects or will affect the earnings of the parties and their ability to pay *or their need to receive spousal support* and separate maintenance ...;

(6) The ages and the physical, mental, and emotional condition of each party;

(7) The educational qualifications of each party;

(8) Whether either party has foregone or postponed economic, education, or employment opportunities during the course of the marriage;

(9) The standard of living established during the marriage;

(10) The likelihood that the party seeking spousal support and separate maintenance can substantially increase his or her income-earning abilities within a reasonable time by acquiring additional education or training;

(11) Any financial or other contribution made by either party to the education, training, vocational skills, career, or earning capacity of the other party;

(12) The anticipated expense of obtaining the education and training described [above] in [subdivision (10)] ...;

(13) The costs of educating minor children;

(14) The costs of providing health care for each of the parties and their minor children;

(15) The tax consequences to each party;

(16) The extent to which it would be inappropriate for a party, because that party will be the custodian of a minor child or children, to seek employment outside the home;

(17) The *financial need* of each party;

(18) The legal obligations of each party to support himself or herself and to support any other person;

(19) Costs and care associated with a minor or adult child's physical or mental disabilities; and

(20) Any other factors as the court determines necessary or appropriate to consider in order to arrive at a *fair and equitable* grant of spousal support and separate maintenance.

*Id*. (emphasis added).

During the final hearing, the family court inquired of both parties regarding some of the mandatory spousal support factors. However, some evidence was disregarded by the family court, some factors were completely missed, and some findings were incorrect. For example, the order states in paragraph thirteen that "[n]o evidence was presented regarding

the educational qualifications of each party." This is inaccurate because the family court specifically asked the parties their level of education and they both testified to having high school diplomas. Additionally, as stated in paragraph eight of the family court's order, "[t]hat it appears [Husband] agreed to pay half of the mortgage for an extended period of time under the caveat that spousal support would not be ordered." The family court specifically inquired of Husband as to why he voluntarily agreed to pay half of the mortgage until July of 2025. He testified that their youngest daughter would be twenty-one years old in March of 2025 and since his kids live with Wife, he thought that would give the youngest child enough time to get on her feet before selling the marital home. There was no testimony or evidence presented that indicated that Husband's intent was to pay half of the mortgage in lieu of spousal support.

The Supreme Court of Appeals of West Virginia has long held that "[q]uestions relating to [spousal support] lie within the sound discretion of the court and that we will not disturb such decisions unless it clearly appears that such discretion has been abused." *Jennifer W. v. Michael W.* 249 W. Va. 146, ___, 895 S.E.2d 1, 4 (2023) (citing Syl. Pt. 2, in part, *Mulugeta v. Misailidis*, 239 W. Va. 404, 801 S.E.2d 282 (2017)). The Supreme Court has also "recognize[d] that as long as the family court *fully* considers the mandatory statutory factors, and its award of spousal support is within the parameters of reasonableness, this Court should not disturb the award on appeal." *Mulugeta* at 410, 801 S.E.2d at 288 (emphasis added).

In *Campbell v. Campbell*, 243 W. Va. 71, 74, 842 S.E.2d 440, 443 (2020), the Supreme Court of Appeals of West Virginia stated the following:

> [a]t its most basic level, an award of spousal support is designed to provide for the care and maintenance of the payee spouse following the termination of the couple's marriage: "[t]he sole purpose of an award of alimony is to provide for the support of a former spouse." (citing Syl. pt. 3, in part, *Clay v. Clay*, 182 W. Va. 414, 388 S.E.2d 288 (1989). . . . Nevertheless, a corollary component to an award of spousal support must necessarily be the payor spouse's ability to satisfy the payment thereof. To this end, the Legislature specifically has recognized that "[a]n award of spousal support shall not be disproportionate to a party's ability to pay as disclosed by the evidence before the court." W. Va. Code § 48-8-103(a).

*Campbell*, 243 W. Va. at 74, 842 S.E.2d at 443. "[T]he determination of awarding [spousal support] is to be based on 'the financial position of the parties.'" *Banker v. Banker*, 196 W.Va. 535, 541, 474 S.E.2d 465, 471 (1996) (quoting *Hickman v. Earnest*, 191 W.Va. 725, 726, 448 S.E.2d 156, 157 (1994)).

The Supreme Court of Appeals has long held that family courts should consider "the financial needs of the parties, their incomes and income earning abilities and their estates,

and the income produced by their estates" in determining the amount of spousal support to be awarded in a modification proceeding. *Campbell*, 243 W. Va. at 75, 842 S.E.2d at 444 (citing Syl. Pt. 2, *Yanero v. Yanero*, 171 W. Va. 88, 297 S.E.2d 863 (1982)). West Virginia Code § 48-6-301(b)(17) requires family courts to consider "[t]he financial need of each party" when determining the proper amount of spousal support to award.

Regarding West Virginia Code § 48-6-301(b)(17), the family court said in its order that "[Wife] testified that she will no longer be receiving child support she would have difficulty paying her bills. [Husband] testified that it would be difficult for him to pay spousal support in addition to covering half of the mortgage payment." Ultimately, the family court's order does not contain findings detailing how it assessed the parties' competing needs.[5]

In *Collisi v. Collisi*, 231 W. Va. 359, 360, 745 S.E.2d 250, 251 (2013), the Supreme Court of Appeals of West Virginia reversed and remanded a family court's order that failed to analyze the financial need of each party in determining spousal support. On remand, the *Collisi* Court instructed the family court to take evidence as to the financial need of the parties and the payor's ability to pay since there were no monetary figures, analysis, or details in the order. *Id*. at 363, 745 S.E.2d at 254. Like *Collisi*, although the family court's order in the present case includes general language of the parties' financial need, "the order again does not include any monetary figures regarding [Wife's] actual need." *Id*.

Additionally, the family court's order failed to consider the distribution of marital property that affects a party's need to receive spousal support pursuant to West Virginia Code § 48-6-301(b)(5). At the hearing, Wife testified that she regretted agreeing to assume the marital credit card debt because it contributed to her inability to pay her monthly expenses. However, the family court disregarded this testimony and stated that it could not consider the marital debt because Wife agreed to assume it in the divorce, contradicting West Virginia Code § 48-6-301(b)(5).

Upon examining the family court's final order, we find that the family court conducted an incomplete analysis of W. Va. Code § 48-6-301(b). "The statute requires more than assumption, it commands analysis and then application." *Banker*, 196 W. Va. at 549, 474 S.E.2d at 479. The final order simply echoes most of the parties' answers to the family court's inquiry regarding some of the statutory factors, does not make specific findings related to all the relevant factors, and fails to include any analysis. Without

---

[5] Similarly, the family court's order also did not discuss Husband's comparative income-earning abilities pursuant to West Virginia Code § 48-6-301(b)(4). The order states that "[Wife] testified that she did not really work during the marriage and began getting disability income in 2007." Other than this general sentence about Wife, the order includes no other language regarding Husband's or Wife's current income-earning ability.

fulsome consideration of the factors, it is unclear how the family court arrived at its conclusion.

For this Court to properly review a family court order:

> "[t]he order must be sufficient to indicate the factual and legal basis for the [family court]'s ultimate conclusion so as to facilitate a meaningful review of the issues presented." *Province v. Province*, 196 W.Va. 473, 483, 473 S.E.2d 894, 904 (1996); *see also Nestor v. Bruce Hardwood Flooring, L.P.*, 206 W.Va. 453, 456, 525 S.E.2d 334, 337 (1999) ("[O]ur task as an appellate court is to determine whether the [family] court's reasons for its order are supported by the record."). "Where the lower tribunals fail to meet this standard—i.e. making only general, conclusory or inexact findings—we must vacate the judgment and remand the case for further findings and development." *Province*, 196 W.Va. at 483, 473 S.E.2d at 904.

*Collisi*, 231 W. Va. at 363-64, 745 S.E.2d at 254-255.

In reviewing the family court's final order, and in consideration of the applicable standard of review, the Court finds that the family court failed to fully consider the necessary support factors and reflect a sufficient analysis regarding spousal support. We find that the family court's generalizations in its findings as to the necessary support factors do not provide a sufficient factual basis for this Court to determine whether the denial of spousal support is an abuse of discretion as argued by Wife.

Therefore, we conclude that this matter should be vacated and remanded. On remand, the family court should fully consider all the mandatory statutory spousal support factors. In particular, the family court should take evidence as to the financial needs and income-earning abilities of both parties, expressly include in its order the monetary amounts it considered in making its determinations under factors set forth in West Virginia Code §§ 48-6-301(b)(3) (the present employment income and other recurring earnings of each party from any source), 48-6-301(b)(4) (income earning abilities of each of the parties), and 48-6-301(b)(17) (financial need of each party), consider the distribution of marital debt in light of the terms of the separation agreement, insofar as the debt affects or may affect a party's need, and provide an appropriate analysis that is supported by specific findings of fact on the support factors.

Accordingly, we vacate the Family Court of Berkeley County's July 28, 2023, final order, and remand for further proceedings consistent with this decision.

Vacated and Remanded.

**ISSUED:**  April 22, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear