IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**October 1, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**TROY CARTER,**
**Grievant Below, Petitioner**

**v.) No. 23-ICA-365**          (Grievance Bd. Case No. 2022-0831-DHS)

**DEPARTMENT OF HOMELAND SECURITY,**
**SOUTHERN REGIONAL JAIL AND**
**CORRECTIONAL FACILITY,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Troy Carter appeals the July 10, 2023, decision of the West Virginia Public Employees Grievance Board ("Board"), which denied his grievance against Respondent Department of Homeland Security ("DHS") and held that DHS was justified in disciplining Mr. Carter based on his failure to report a possible use of force incident. DHS filed a response.[1] Mr. Carter did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. This case satisfies the "limited circumstances" requirement of Rule 21 of the Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion. For the reasons expressed below, the decision of the Board is vacated, and this matter is remanded for entry of a new decision.

Mr. Carter was employed by DHS as a Correctional Officer V, a Shift Supervisor, and held the rank of lieutenant at Southern Regional Jail and Correctional Facility ("Southern"). This case concerns a possible use of force that occurred on January 26, 2022, by another corrections employee, Corporal Pack.

After the alleged use of force incident, there was a conversation between Corporal Pack and Mr. Carter over Southern's A-Tower intercom. That conversation, which was transcribed by Investigator Jaymi Martin as part of the DHS's investigation, contained the following exchange:

---

[1] Mr. Carter is represented by Amanda J. Taylor, Esq., and DHS is represented by Jonathan M. Calhoun, Esq.

Corp. Pack: I hate my f***ing job some days.

Mr. Carter: Say what?

Pack: I hate my f***ing job some days.

Carter: Why?

Pack: That (redacted) dumb mother f***er in Medical.

Carter: What did he do?

Pack: He apparently . . . you got one of the damn trustees coming through for whatever f***ing reason, hold on. Alright, anyway. He apparently like climbed under (inaudible) bunk and was not coming out. Radosevich was like trying to, I don't know Radosevich was trying to f***ing do, f***ing dick around with him I guess cause he was like holding on to the bed or whatever. I went in there and smacked him one good time in the f***ing ribs and was like mother f***er, if you don't come out, you haven't dealt with me yet. I said I will f***ing hurt you. I said get the f*** out. He said (Pack makes stuttering noises) and went to hawk a loogie or something. I said please spit on me. Old man or not, you're about to lose your f***ing false teeth.

Carter: Did he listen to you?

Pack: (Pack makes stuttering noses again) Mamaw was like "yeah, I wouldn't spit on that one."

Carter: I love Mamaw.

Pack: He took his meds and everything once I got there. I don't know what Radosevich was f***ing doing.

Carter: What are you doing right now?

Pack: Just doing wellness, staying out of the eye of Burton.

Carter: Come up for a minute.

On May 16, 2022, Mr. Carter received a phone call from Major Larry Warden informing him that he was being suspended for sixty (60) days pending investigation of a possible unreported use of force that occurred on January 25 or 26 of 2022. On the same

day, the DHS sent Mr. Carter a letter to confirm his verbal, non-disciplinary suspension pending investigation of an unreported use of force.

By letter dated September 6, 2022, Mr. Carter was notified of a predetermination conference to be held on September 8, 2022. The letter stated that the meeting would be held to provide Mr. Carter with an opportunity to respond to the tentative conclusion that he should be suspended for failing to report a suspected use of force.

Following the predetermination hearing, on September 13, 2022, Mr. Carter was notified by letter that the investigation was concluded, and he was being suspended for forty (40) hours for his failure to report a suspected use of force. The letter stated that Mr. Carter violated the following:

Policy Directive 129.00

II. The Division expects its employees to:

> B. conduct themselves in a manner that creates and maintains respect for the Division and the State of West Virginia.

IV. The basic principle underlying disciplinary procedures is that the Division must demonstrate cause for disciplining a classified employee.

> F. The following list of violations is intended to be an illustrative but not all-inclusive code of conduct covering all employees regardless of their employment status with the Division. Accordingly, a violation or other misconduct although not listed below, but found by management to undermine the effectiveness of the Division's activities or the employee's performance should be treated consistent with the provisions of this policy.
>
>> 1. Failure to comply with Written Instructions (e.g. Policy Directives, Protocols, Commissioner's Instructions etc.)
>>
>> 5. Instances of inadequate or unsatisfactory job performance.
>>
>> 15. Failure to observe precautions or personal safety, posted rules, institutional operational procedures, signs, written or oral safety instructions, or failure to use protective clothing equipment.
>>
>> 28. Falsifying any information whether through intentional misstatement, exaggeration, omission or concealment of facts.

3

36. Negligence on the job which results in the escape, death, or injury of an inmate/resident/offender or the death or injury of another person.

48. Failure to file a written report by the end of the duty shift concerning any incident, violation of law, rules and/or regulations, or information relative to the safety and security of the agency or any of its locations, its employees, persons under agency custody or supervision, or the public.

59. Failure to appropriately intervene to attempt to prevent, stop, and report another person from conducting any act that is unethical, or violates law or policy; when such misconduct creates an actual potential threat to another person's safety or security, employees are required to immediately and appropriately intervene and report it.

Policy Directive 303.00

P. In all situations where any force is used, individual written reports shall be submitted by anyone involved in any way or any witnesses by the end of their shift, unless serious injury prevents that.

On May 31, 2022, Mr. Carter filed his grievance. A Level One hearing was held on June 16, 2022, and Mr. Carter's grievance was thereafter denied. On July 22, 2022, Mr. Carter retained counsel to represent him. On September 29, 2022, the parties unsuccessfully mediated.

On March 21, 2023, a Level Three hearing was held by Board Administrative Law Judge ("ALJ") Carrie LeFevre. After the hearing, ALJ LeFevre resigned, and the matter was reassigned to ALJ Wes White who rendered the written decision. In the July 10, 2023, written decision, the Board found that "[c]ertain facts surrounding the events which led to [Mr. Carter's] suspension were the subject of conflicting testimony." The Board then performed a credibility assessment and found Mr. Carter's version of events to be not credible. The Board then concluded that Mr. Carter violated the mandatory reporting provisions of Policy Directive 303.00, which, as cited in the Board's decision, required reporting by "any staff person using and/or witnessing use of force beyond . . . verbal direction[.]" The Board went on to conclude that Mr. Carter failed to establish a prima facie case that the discipline imposed upon him was the result of discrimination or retaliation and that even if he did, DHS had successfully rebutted such a claim by showing a legitimate non-retaliatory reason for the discipline. Lastly, the Board concluded that Mr. Carter's due

4

process rights were not violated as he received a predetermination hearing, notice, and an opportunity to respond. It is from this decision that Mr. Carter appeals.

In this appeal, our governing standard of review for a contested case from the West Virginia Public Employees Grievance Board is as follows:

> A party may appeal the decision of the administrative law judge on the grounds that the decision:
>
> (1) Is contrary to law or a lawfully adopted rule or written policy of the employer;
> (2) Exceeds the administrative law judge's authority;
> (3) Is the result of fraud or deceit;
> (4) Is clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (5) Is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va. Code § 6C-2-5(b) (2007);[2] *accord* W. Va. Code § 29A-5-4(g) (2021) (specifying the standard for appellate review of administrative appeal). *See also,* Syl. Pt. 1, in part, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996) (on appeal, a court may not overturn a finding simply because it would have decided case differently). However, "[t]his Court cannot perform its function [as an appellate court] unless [the lower tribunal's] order contains both the factual and legal basis for its ultimate conclusion." *Nestor v. Bruce Hardwood Flooring, L.P.,* 206 W. Va. 453, 456, 525 S.E.2d 334, 337 (1999).

Here, the September 13, 2022, letter listed various provisions of Policy Directive 129.00 and subsection "P" of Policy Directive 303.00 that were allegedly violated by Mr. Carter's conduct. The Board's decision cited to Section VI subsection "A" of Policy Directive 303.00 which was not cited in the September 13, 2022, letter, but states:

> Any staff person using and/or witnessing the use of force beyond the control level of verbal direction must be able to clearly articulate in a written report the level of resistance faced, the level of control used, and that control was affected in the lawful performance of duty. Such written reports shall be in the established Division format, and shall be submitted as soon as the individual situation allows; Reports regarding use of force incidents in correctional facilities will be submitted to the Shift Commander[.]

---

[2] We acknowledge that West Virginia Code § 6C-2-5 was recently amended, effective March 1, 2024. However, the former version of the statute was in effect at the time the Board's decision was entered and applies to this case.

The Court notes at the outset that since this was a disciplinary matter, the burden of proof rested with DHS to prove by a preponderance of the evidence that the disciplinary action taken was justified. W. Va. Code St. R. § 156-1-3 (2018). Despite the credibility analysis performed by the Board, the Board's Decision never addresses how, under the facts of this case, DHS met its burden of proving that Mr. Carter violated the provisions of the Policy Directives cited in the September 13, 2022, letter. Further, as to the Policy Directive provision relied on by the Board, the decision did not include any analysis of how Mr. Carter being informed of the possible use of force after the fact constitutes Mr. Carter "using and/or witnessing" a use of force. Given the Board's lack of analysis of the facts of this matter as applied to the Policy Directive subsections listed as a basis for discipline in the September 13, 2022, letter, the Board's decision is vacated, and this matter is remanded for entry of a new order that analyzes the facts of this matter relative to the stated basis for discipline put forth by DHS.

Vacated and Remanded.

**ISSUED:** October 1, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

6