# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**March 24, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**KYLE B.,**
**Respondent Below, Petitioner**

**v.) No. 24-ICA-235**   (Fam. Ct. Raleigh Cnty. Case No. FC-41-2019-D-276)

**DENISA B.,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Kyle B.[1] ("Father") appeals the Family Court of Raleigh County's May 10, 2024, order that denied his petition for modification of custodial allocation and petition for contempt. Respondent Denisa B. ("Mother") filed a response in support of the family court's order. Father did not file a reply. The guardian ad litem ("GAL") for the minor son did not participate in this appeal. The GAL for the minor daughters filed a response in support of the family court's order.[2]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the family court's decision but no substantial question of law. For the reasons set forth below, a memorandum decision vacating and remanding for further proceedings is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties were married in 2010, separated in 2019, and divorced in 2020. Three children were born of the marriage. They have one son, K.T.B., who was born in 2012, and twin daughters, K.M.B. and K.A.B., who were born in 2015. Mother was awarded primary custody of the children by order entered July 26, 2019. Father was awarded parenting time every other weekend. This custodial allocation was incorporated into the parties' final divorce order entered on March 18, 2020.

---

[1] To protect the confidentiality of the juveniles involved in this case, we refer to the parties' last name by the first initial. *See, e.g.,* W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Both parties are self-represented. The GAL for the daughters is Marie C. Bechtel, Esq.

1

On June 11, 2021, one of the parties filed a petition for modification.[3] On August 9, 2021, the family court entered an order appointing a GAL for the children.[4] At some point not clear from the record, K.T.B. purportedly threatened to hurt himself if he continued living with Mother. On January 5, 2022, the family court entered a temporary order that awarded Father primary custody of K.T.B. and gave Father parenting time with the girls on every other weekend. Mother received parenting time with K.T.B. on every other weekend. The court ordered that all custody exchanges occur at the McDonalds in Sophia, West Virginia. The court noted that it was particularly concerned with the animosity between the parents and their discussions of court proceedings in the presence of the children.

Sometime before a hearing scheduled for June 6, 2022, Mother alleged that K.T.B. initiated sexual contact with K.A.B. during Mother's parenting time in the presence of Mother's boyfriend, who is a Child Protective Services ("CPS") social worker, and a referral was sent to CPS. On July 5, 2022, the family court entered a temporary order from the June 6, 2022, hearing that modified the previous parenting plan by suspending Mother's parenting time with K.T.B. In its order, the court stated that it was concerned with K.T.B.'s recent behavior and the welfare of the two girls. Father's parenting time with the girls remained the same.

By letter dated July 15, 2022, CPS informed the family court that it completed its investigation regarding Mother's allegations. CPS found that the allegations of K.T.B. assaulting K.A.B. were unsubstantiated. The report stated the following:

> [K.A.B. was] asked if [K.T.B.] said to pull his pants down and [K.A.B.'s] pants down and sit on his lap. [K.A.B.] states she said "no" and that it never did actually happen. She reports no one was around when this happened. [K.A.B.] reports [K.T.B.] or anyone else has never touched her in her private parts.

The report further stated that the GAL, Mr. Houck, said that Mother has lied and been manipulative throughout the family court proceedings. Mr. Houck reported that "throughout the series of hearings regarding the children[,] there have been concerns that Mother is lying, making things up." Mr. Houck "has concerns about whether the incident truly occurred, or i[f] [Mother is] creating stories in attempts to maintain full custody [of

---

[3] The June 11, 2021, petition is not in the record before this Court. However, the docket sheet establishes that the petition was filed on that particular date but does not state which party filed the petition.

[4] The court appointed G. Todd Houck, Esq. as GAL for all three children.

the girls]. That there is doubt as to whether this incident occurred." The report went on to say the following:

> At the June 6, 2022, hearing, [Mother] alleged that while [K.T.B.] was at her home visiting, that he pulled down his underwear and told one of his sisters to sit on his (genitals). . . Father became so upset he left the room. [Mr.] Houck asked [Mother] why she didn't call [Father] and inform him of this incident when it occurred. [Mother] replied that she wanted to "surprise yall in court."

However, a treatment summary from a Solutions Psychological Services therapist dated November 29, 2022, stated that K.A.B. verbalized that "[K.T.B.] told me to pull my shorts and panties down and he pulled his pants down and wanted me to sit on his lap. Mom walked in and I told her what [he] did. [K.T.B.] said it didn't happen. He doesn't want to get in trouble. [He] lies all the time."

On July 25, 2023, Father filed a petition for modification of custody and a petition for contempt.[5] In his petition to modify, Father requested primary custody of the girls, alleging that Mother was improperly medicating them with ADHD medicine and melatonin, and that the girls informed him that they were not treated as well as the daughter of Mother's boyfriend. In his petition for contempt, Father attached numerous exhibits of correspondence and alleged that Mother continued to ignore his questions regarding the children's doctors' appointments and medications, which was in violation of the family court's August 9, 2021, contempt order. On August 3, 2023, the family court entered an order appointing Ms. Bechtel as GAL for the girls. Mr. Houck remained GAL for the boy.

On December 13, 2023, the family court held a hearing.[6] The court notified CPS by written referral that it had reasonable cause to suspect that the children had been abused and/or neglected. The court explained that Father had introduced photographs of one of the female children in an attempt to illustrate her substantial weight loss from ADHD medication. One photograph depicted the girl standing in underwear with her breasts exposed and nipples blacked out with a Sharpie marker. Although the photograph was intended to illustrate the child's weight loss, since repeated sexual allegations had been alleged in the case and the children's GALs requested a deeper investigation into the matter, the family court advised CPS to complete an investigative report. The family court

---

[5] On July 6, 2023, a new family court judge was assigned to the case after the retirement of Judge Louise E. Goldston.

[6] Although the record is unclear, the hearing held on this date was presumably for Father's petitions for custodial modification and contempt.

also notified the circuit court pursuant to Rule 48 of the Rules of Practice and Procedure for Family Court.

After receiving the family court's written referral, the circuit court entered an administrative order on December 13, 2023, directing CPS to investigate the allegations contained within the referral. On January 25, 2024, CPS completed its investigation, finding that the abuse and neglect allegations had not been substantiated. "All three children had a forensic interview and sexual abuse/sexual exploitation was not disclosed. All children denied any abuse or neglect issues. [Father] admitted that he showed two photos in a court hearing in an attempt to show how much weight his daughter, [K.A.B.], had lost over an 18-month period." Although no order was entered between December 13, 2023, and February 11, 2024, the record indicates that Father's parenting time with the girls was immediately suspended during the CPS investigation because of these photographs.

On February 6, 2024, the family court held another hearing on Father's Petition for Modification and Petition for Contempt. A review of the recording of this hearing indicates that a Child Advocacy Center ("CAC") forensic interview of the girls took place sometime in January of 2024 regarding the photographs that Father had introduced at the December 13, 2023, hearing. During the CAC interview, K.A.B. allegedly reported that K.T.B. had touched her on her clothes around her vaginal area. Father exhibited frustration and asked the court why he was not made aware of the interview or the allegations until that moment. Father argued that he should have been made aware of the interview and had concerns of the girls being coached. Father referenced the July 2022 CPS report that stated how there were concerns of Mother making up these sexual allegations. The GAL informed the court that she would like to re-interview the girls to determine if they feared abuse by their brother to such a level that Father's overnight visits should be precluded.

By order entered February 12, 2024, the court found that the girls' GAL had no concerns for the safety of the children regarding Father but had concerns for the safety of the girls if left unsupervised with their brother. Father's parenting time with the girls was modified from every other weekend to every Saturday from 10:00 a.m. to 8:00 p.m. and every Sunday from 10:00 a.m. to 6:00 p.m. for the purpose of excluding overnights due to K.T.B.'s presence in Father's home. The custody exchanges were to occur at the McDonalds in Sophia, as had been the exchange location since January 2022. The court scheduled the final hearing on Father's petitions for March 8, 2024.

On March 8, 2024, the family court held the final hearing on Father's Petition for Contempt and Petition for Modification. The girls' GAL testified that she had no concerns for the safety of the children while in Father's care, but she was concerned for the safety of the girls if left unsupervised with their brother. The GAL further testified that the children would have to share a bedroom at Father's home and recommended that no overnight visitation should occur there. Father asserted that Mother was in contempt of the

court's August 9, 2021, Contempt Order for not informing him of the numerous medical decisions she had made without his knowledge or consent, although he had consistently asked for any information relating to his children's medical care.

On May 9, 2024, at 12:11 p.m., counsel for Mother filed the proposed order from the March 8, 2024, hearing pursuant to Rule 22(b) of the Rules of Practice and Procedure for Family Court. On May 10, 2024, at 8:12 a.m., the family court entered the final order. In its order, the court stated that it was concerned that Father did not believe his daughter regarding the sexual allegations and found that the girls' GAL and the children's maternal grandmother had no concerns regarding K.A.B.'s prescribed ADHD medication. The court also found that the GAL had no concerns for the safety of the children in the care of Father but had concerns for the safety of the girls if left unsupervised with their brother, and that since the children would have to share a bedroom at Father's home, the GAL recommended that Father have no overnight parenting time with the girls. The court further found that K.A.B.'s disclosure in her January 2024 CAC interview was credible and presented a need to modify the parenting plan. The court adopted Mother's requested parenting plan, which awarded Mother parenting time with K.T.B. every other Sunday from 2:00 p.m. to 4:00 p.m. at the maternal grandmother's home and awarded Father parenting time with the girls on every other Saturday from 10:00 a.m. to 8:00 p.m. The exchange location was changed to the "Eisenhower Sheets location." The court stated that child support would be noticed for hearing at a later date but ordered Father to continue to provide medical coverage for the children. It is from this order that Father now appeals.

When reviewing the order of a family court, we apply the following standard of review:

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Father argues multiple assignments of error. First, Father asserts that the family court deprived him of his ability to represent himself by exhibiting improper bias against him because he did not have legal representation. In support of his argument, he contends that the court prevented him from arguing his case by suggesting that he hire counsel and only considered Mother's arguments because she was represented below. We disagree.

5

A review of the record establishes that Father was permitted to represent himself throughout the proceedings. Further, in response to Father's allegations of judicial bias, generally, a party contending bias would seek disqualification of the offending judge, pursuant to Rule 58 of the Rules of Practice and Procedure for Family Court.[7] No motion for disqualification of the family court judge was filed by Father below. "As noted in Rule 58, which references Rule 17 of the Trial Court Rules, decisions regarding disqualification of judges are made by the Chief Justice of the SCAWV and are not the province of this Court." *In re C.S.*, 251 W. Va. 147, __, 909 S.E.2d 819, 823-824 (Ct. App. 2024). Moreover, Father did not substantiate his claim of bias and has not established that his due process rights were violated at any time during the proceedings. *See Xerxes R. v. Richard P.*, No. 24-ICA-76, 2024 WL 5003524 (W. Va. Ct. App. Dec. 6, 2024) (memorandum decision). Thus, we find no error or abuse of discretion.

As his next assignment of error, Father argues that the family court erred by failing to comply with Rules 22(a) and (b) of the Rules of Practice and Procedure for Family Court. He first asserts that the family court failed to adhere to Rule 22(a) because the final order was entered two months after the hearing. Rule 22(a) provides, in pertinent part, that "[a]ll orders shall be entered by the court within 20 days of the hearing[.]" While Father is correct that the order from the March 8, 2024, hearing was not entered until approximately two months after the hearing, the record below reflects that Father took no action to compel entry of the order.

---

[7] Rule 58 of the Rules of Practice and Procedure for Family Court states the following:

> (a) The procedure for disqualification of family court judges shall be the same as that set forth in Trial Court Rules for Trial Courts of Record, Rule 17.

> (b) Assignments to Hear Emergency Matters Pending a Ruling; Assignments in the Event of Disqualification. The chief justice of the Supreme Court of Appeals may assign another family court judge, a former family law master or family court judge, circuit court judge or senior status circuit court judge to hear emergency matters pending a ruling. In the event a disqualification motion is granted the chief justice shall promptly assign another family court judge, a former family law master or family court judge, circuit court judge or senior status circuit court judge to preside over the case.

The SCAWV has long held that "[a] litigant may not silently acquiesce to an alleged error, or actively contribute to such error, and then raise that error as a reason for reversal on appeal." Syl. Pt. 1, *Maples v. W. Va. Dep't of Commerce, Div. of Parks & Recreation*, 197 W. Va. 318, 475 S.E.2d 410 (1996). Here, from the time of the March 8, 2024, hearing until the entry of the May 10, 2024, order, there were no motions for entry of an order filed by Father (or any other party). Father made no attempts to schedule further hearings on custody issues and did not initiate any mandamus proceeding to compel entry of the order. Simply stated, he did nothing proactively to facilitate the entry of the order at issue. *See In re C.S.*, 251 W. Va. at __, 909 S.E.2d at 823.

Father also argues that the family court erred by failing to comply with Rule 22(b) of the Rules of Practice and Procedure for Family Court because the court entered the proposed order in less than twenty-four hours, which deprived him of his opportunity to submit written objections.[8] We find merit in this argument. Pursuant to Rule 22(b), Father was to be afforded five full days during which to submit his written objections to the proposed order. *See Thomas M. v. Robyn C.*, No. 23-ICA-554, 2024 WL 3594332, at *3 (W. Va. Ct. App. July 30, 2024) (memorandum decision). Whereas here, counsel for Mother submitted the proposed order on May 9, 2024, and the family court entered the order the following morning. Therefore, we conclude that the family court erred by not allowing Father the full five days, as provided by Rule 22(b), in which to submit his written objections to the proposed order. *See id.*

As his next assignment of error, Father argues that the family court erroneously considered false testimony during the March 8, 2024, final hearing. We find no merit in this argument. The SCAWV has consistently held that "[a]n appellate court may not decide the credibility of the witnesses or weigh evidence as that is the exclusive function and task

---

[8] Rule 22(b) of the Rules of Practice and Procedure for Family Court states, in part:

An attorney assigned to prepare an order or proposed findings shall deliver the order or findings to the court no later than ten days after the conclusion of the hearing giving rise to the order or findings. Within the same time period the attorney shall send all parties copies of the draft order or findings together with a notice which informs the recipients to send written objections within five days to the court and all parties. If no objections are received, the court shall enter the order and findings no later than three days following the conclusion of the objection period. If objections are received, the court shall enter an order and findings no later than ten days after the receipt of the objections.

of the trier of fact." *State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995). Further, this Court has previously held the following:

> [We] cannot set aside a family court's factual findings "unless they are clearly erroneous." A finding is clearly erroneous only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Syl. Pt. 1, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996). Under the clearly erroneous standard, an appellate court does not reweigh the evidence and cannot reverse a family court's findings simply because it may have viewed the evidence differently. *See Mulugeta v. Misailidis*, 239 W. Va. 404, 408, 801 S.E.2d 282, 286 (2017). Further, a family court is entitled to deference to the extent it relies on determinations it made of the parties' credibility. *See Thomas E. v. Amy F.*, No. 13-0176, 2013 WL 5708438, at *2 (W. Va. Oct. 21, 2013) (memorandum decision).

*James W. v. Ciara R.*, Nos. 23-ICA-237, -238, and -239, 2024 WL 1740353, at *6 (W. Va. Ct. App. Apr. 22, 2024) (memorandum decision). Therefore, we find no error.

Father also argues that the family court's finding that he had been responsible for 100% of the children's medical coverage was clearly wrong, and thus, the court ordering his responsibility of the children's medical coverage to continue was erroneous. Father contends that this ruling was based upon counsel for Mother's representation to the court because counsel relied on the court's January 5, 2022, order, instead of the July 5, 2022, order, in her Motion to Recalculate Child Support filed on February 27, 2024. We find merit in this argument.

Mother's February 27, 2024, Motion to Recalculate Child Support referenced the January 5, 2022, order's language, and asked the family court to modify child support retroactively. The court's January 5, 2022, order required Father to be responsible for "100% of the childrens' [sic] medical coverage." However, the court's July 5, 2022, order modified the January 5, 2022, order, by stating that "[t]he former parenting plan is hereby MODFIED to reflect that [Father] shall pay 100% of any non[-]covered medical expenses for the minor children." Accordingly, we conclude that the family court's finding that Father "continue" to provide the children's medical coverage was clearly erroneous because he was not previously responsible for the children's medical coverage.[9]

---

[9] We remind the family court that the SCAWV has held that "[t]he authority of a family court to modify a . . . child support award is prospective only . . . a family court is without authority to modify or cancel accrued alimony or child support installments." Syl. Pt. 2, in part, *Hayhurst v. Shepard*, 219 W. Va. 327, 633 S.E.2d 272 (2006). Thus, any modification of child support on remand should be prospective only. *See Ann L. v. Patrick*

8

As his next assignment of error, Father argues that the family court erred by failing to consider the girls' preference to have Father's parenting time reinstated. We disagree. West Virginia Code § 48-9-402(b)(4) (2022) states that the family court may accommodate the preference of a child under fourteen years of age if it determines that the preference is in the child's best interest and if the child is "sufficiently matured that he or she can intelligently express a voluntary preference[.]" *See also* W. Va. Code § 48-9-209(f)(5)(E) (2024). Here, the minor girls were eight years old, and the family court exercised its discretion not to accommodate their preference. Thus, we find no error.

Father also argues that the family court abused its discretion by failing to consider the best interests of the children when it adopted Mother's proposed parenting plan. In support of his argument, Father argues that the court's change of the parties' custody exchange location minimizes his parenting time with his children. We find merit in this argument.

When crafting parenting plans, this Court recently stated:

West Virginia Code § 48-9-102a (2022) provides: There *shall be a presumption*, rebuttable by a preponderance of the evidence, that equal (50-50) custodial allocation is in the best interest of the child. *If the presumption is rebutted, the court shall*, absent an agreement between the parents as to all matters related to custodial allocation, *construct a parenting time schedule which maximizes the time each parent has with the child and is consistent with ensuring the child's welfare.* (emphasis added.) A rebuttable presumption is controlling unless or until such presumption is overcome by competent proof to the contrary. *See Boggs v. Settle*, 150 W. Va. 330, 145 S.E.2d 446 (1965) (Establishing a burden for rebutting the prima facie showing). In the event that such evidence is presented, the family court shall maximize the parenting time with each parent. In the exercise of its discretion, the family court may use the variety of alternative options as contained in West Virginia Code § 48-9-209(b) to ensure the child's welfare without sacrificing maximum parenting time with each parent.

*Kane M. v. Miranda M.*, 250 W. Va. 701, __, 908 S.E.2d 198, 203 (Ct. App. Oct. 17, 2024) (memorandum decision). The family court's modification of the custody exchange location from the McDonald's in Sophia to Sheetz in Eisenhower requires Father to drive approximately one hour to and from his home each way, totaling four hours of driving

---

*J.,* No. 22-ICA-316, 2023 WL 4029109, at \*3 (W. Va. Ct. App. June 15, 2023) (memorandum decision).

every other Saturday for his parenting time with the girls and four hours of driving every other Sunday for Mother's parenting time with the boy. Excluding the driving, Father receives approximately eight hours of parenting time with his daughters every two weeks. The parenting time schedule does not appear to *maximize* Father's parenting time pursuant to West Virginia Code § 48-9-102a. Thus, we conclude that the family court abused its discretion by failing to expressly consider whether the parenting plan maximizes Father's parenting time in accordance with the statute.

Turning to the issue of whether the family court's modification was in the best interest of the children, as we previously mentioned, there is a rebuttable presumption that equal (50-50) custody is in the best interest of the children. *See* W. Va. Code § 48-9-102a. However, before a court can modify a parenting plan, it must first find a substantial change of circumstance has occurred pursuant to West Virginia Code § 48-9-401 (2022).[10] After articulating that a substantial change in circumstances has occurred, the family court must then express and analyze that a modification is in the best interest of the children. *See Dusti A. v. Jonathan A.*, No. 23-ICA-125, 2024 WL 794624, at \*5 (W. Va. Ct. App. Feb. 27, 2024) (memorandum decision). West Virginia Code § 48-9-206(a) provides, "[u]nless otherwise resolved by agreement of the parents [. . .] or unless harmful to the child, the court shall allocate custodial responsibility so that, except to the extent required under § 48-9-209 of this code, the custodial time the child spends with each parent shall be equal (50-50)." To justify a deviation from equal (50-50) custody, the family court is required to sufficiently address and analyze the factors enumerated in West Virginia Code § 48-9-209(f) (2024). We have consistently stated that West Virginia Code § 48-9-206(d) requires parenting plan orders to contain specific findings of fact and conclusions of law to support a court's decision.

The SCAWV has said that to properly review an order of a family court

The order must be sufficient to indicate the factual and legal basis for the [family court's] ultimate conclusion so as to facilitate a meaningful review of the issues presented. *Province v. Province*, 196 W. Va. 473, 483, 473 S.E.2d 894, 904 (1996); *see also Nestor v. Bruce Hardwood Flooring, L.P.*, 206 W. Va. 453, 456, 525 S.E.2d 334, 337 (1999) ("[O]ur task as an appellate court

---

[10] West Virginia Code § 48-9-401 states, in part, the following:

(a) Except as provided in § 48-9-402 or § 48-9-403 of this code, a court shall modify a parenting plan order if it finds, on the basis of facts that were not known or have arisen since the entry of the prior order and were not anticipated in the prior order, that a substantial change has occurred in the circumstances of the child or of one or both parents and a modification is necessary to serve the best interests of the child.

is to determine whether the circuit court's reasons for its order are supported by the record.") "Where the lower tribunals fail to meet this standard – *i.e.* making only general, conclusory, or inexact findings – we must vacate the judgment and remand the case for further findings and development." *Province*, 196 W. Va. at 483, 473 S.E.2d at 904.

*Collisi v. Collisi*, 231 W. Va. 359, 364, 745 S.E.2d 250, 255 (2013).

Here, although it appears that Father's parenting time with his daughters was decreased due to the allegations against K.T.B., that incident did not happen during Father's parenting time; it occurred during Mother's parenting time. Nonetheless, the court's order does not provide any findings or analysis as to whether there was a substantial change in circumstances, whether Mother rebutted the presumption of equal 50-50 custody, how the parenting plan maximized each party's parenting time, what factors justified a deviation from equal (50-50) custody, and how the modified parenting plan was in the children's best interest. Upon review, the family court's May 10, 2024, order does not contain sufficient findings of fact and conclusions of law to indicate the factual and legal basis for the family court's conclusion to modify Father's parenting time with his daughters. Based on the foregoing, we vacate the family court's order and remand the case for entry of an order addressing whether there was a substantial change in circumstances, along with sufficient findings of fact and conclusions of law to justify its ruling.

Lastly, Father argues that the family court failed to hear his petition for contempt within the required time frame and refused to consider evidence that Mother was in willful contempt of the court's previous order. Upon review, the family court's August 9, 2021, contempt order required Mother to answer and supply Father with any information or documentation concerning the children that he is legally entitled to or pay a contempt fine for every occurrence in which she fails to do so. Although the record establishes that Father introduced evidence regarding his petition for contempt, we find that the court's order fails to include sufficient findings of fact and conclusions of law to allow for meaningful appellate review. Thus, this issue must be sufficiently addressed in a new final order on remand.

The family court's May 10, 2024, is hereby vacated, and the court's February 12, 2024, temporary order shall remain in effect until the entry of a new final order consistent with this decision is issued by the family court.

Vacated and Remanded.

**ISSUED:** March 24, 2025

11

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White